UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                             Chapter 11

JOHN A. YANCHUNIS, SR.,                            Case No. 8:16-bk-10109-MGW

       Debtor.

_____/

## MOTION TO APPROVE SETTLEMENT
## WITH JAMES HOYER, P.A.; FOUNDERS FUNDING GROUP, LLC;
## W. CHRISTIAN HOYER; JOHN R. NEWCOMER, JR.; AND NANCY HARRISON

---

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

       Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.

       If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at Sam M. Gibbons U.S. Courthouse, 801 North Florida Avenue, Suite 555, Tampa, Florida 33602-3899, and serve a copy on the movant's attorney, Scott A. Stichter, Esquire, Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602, and any appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of ah hearing, or consider the response and grant or deny the relief requested without a hearing.

       If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

       JOHN A. YANCHUNIS, SR. (the "**Debtor**" or "**Yanchunis**"), by and through his undersigned attorneys, files this Motion to Approve Settlement with James Hoyer, P.A. ("**James Hoyer**"), Founders Funding Group, LLC ("**Founders Funding**"); W. Christian Hoyer ("**Hoyer**"); John R. Newcomer, Jr. ("**Newcomer**"); and Nancy Harrison ("**Harrison**" and

together with Yanchunis, James Hoyer, Founders Funding, Hoyer, and Newcomer, the "**Parties**") (the "**Motion**") and in support thereof, respectfully represents as follows:

1. The Debtor filed his Voluntary Petition under Chapter 11 of the Bankruptcy Code on November 28, 2016 (the "**Petition Date**").

2. On February 16, 2017, the Debtor initiated an adversary proceeding styled *John Allen Yanchunis, Sr., v. James Hoyer, P.A., f/k/a James, Hoyer, Newcomer & Smiljanich, P.A., f/k/a James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A.; Founders Funding Group, LLC; W. Christian Hoyer; John R. Newcomer, Jr.; and Nancy Harrison*, Adversary Proceeding No. 8:17-ap-00141-MGW (the "**Adversary Proceeding**").

3. On July 19, 2017, this Court entered its Order Approving Debtor's First Amended Disclosure Statement for Debtor's First Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, and Confirming Debtor's First Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, as Modified (Doc. No. 127).

4. On March 1, 2017, Harrison filed a claim against the Debtor seeking to recover $279,000 provide for in the judgment plus pre-petition attorney's fees and interest (the "**Harrison Claim**"), to which the Debtor filed an Objection. The Court entered its Order Granting Debtor's Emergency Motion to Approve Settlement Agreement with Nancy Harrison (Doc. No. 191), which allowed the Harrison Claim in the amount of $321,000.00

5. Yanchunis, James Hoyer, Founders Funding, Hoyer, Newcomer, and Harrison have reached a settlement during the middle of the trial of the Adversary Proceeding of certain claims as set forth in the Settlement Agreement (the "**Settlement Agreement**") (attached hereto

as **Exhibit A**).[1]   The Settlement Agreement does not provide for the settlement or release of claims more fully described in paragraph 16 of the Settlement Agreement.

6.      The Motion attempts to summarize the terms of the Settlement Agreement.   To the extent of a conflict between the Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

7.      Subject to Court approval, the parties have agreed as follows:

(a)      James Hoyer, Hoyer, and Newcomer (collectively, the "**James Hoyer Defendants**") shall be jointly and severally liable to pay Yanchunis the amount of One Million Two Hundred Twenty Five Thousand Dollars ($1,225,000.00) (the "**Settlement Amount**").   Upon the receipt of the Initial Settlement Payment (as defined below), Newcomer shall be released from the joint and several liability for the payment of the balance of the Settlement Amount.

(b)      The James Hoyer Defendants agree to pay to Yanchunis, in cash and U.S. Dollars, the Settlement Amount.   Each installment of the Settlement Amount shall be made payable to Stichter Riedel Blain & Postler, P.A. Trust Account.

(c)      The Settlement Amount shall be paid as follows:

(i)      $500,000 on or before August 18, 2018 (the "**Initial Settlement Payment**");[2]

(ii)      The balance of the Settlement Amount in the amount of $725,000 shall accrue interest at the rate of five percent (5%) per annum and shall be paid as follows: (a) on or before July 19, 2019, the James Hoyer Defendants shall pay $362,500 plus accrued interest; and (b) on or before July 19, 2020, the James

---

[1]   The Motion summarizes the terms of the Settlement Agreement.   In the event of a conflict between the terms of the Settlement Agreement and the Motion, the terms of the Settlement Agreement shall control.
[2]   The Initial Settlement Payment has been received by the Debtor.

Hoyer Defendants shall pay $362,500 plus accrued interest; and

(iii)     There shall be no pre-payment penalty.  In the event that the Settlement Amount is pre-paid, interest shall be calculated through the date of any pre-payment.

(d)     In the event of a failure to pay any amounts due under the Settlement Agreement, Yanchunis shall provide the James Hoyer Defendants and their counsel with notice of default and the opportunity to cure such default within five (5) business days. In the event that the outstanding payment is not made within five (5) business days, Yanchunis may seek the entry of a judgment in the amount of $2.4 million less payments made under the Settlement Agreement by filing an affidavit of default, with the only defenses available to the James Hoyer Defendants being whether the delinquency existed or was cured.

(e)     The James Hoyer Defendants stipulate and agree that the amounts owed under the Settlement Amount and the $2.4 million judgment referenced in paragraph 6 above shall be non-dischargeable.  Simultaneously with the execution of this Settlement Agreement, the James Hoyer Defendants have executed a statement of facts (the "**Fact Stipulation**"), which they will submit to the Court in camera and ex parte for approval in connection with the filing of a motion.  If approved by the Court, the Fact Stipulation shall be filed under seal.  The James Hoyer Defendants agree not to contest any matters set forth in the Fact Stipulation.  The order approving this Settlement Agreement shall recognize a sufficient basis for the Settlement Amount to be non-dischargeable and the James Hoyer Defendants agree to provide additional statements if the Court determines the Fact Stipulation is insufficient to make a finding that the Settlement Amount is non-

dischargeable.  The contents of the Fact Stipulation shall not be disclosed to any person or entity, except: (i) to the Court to the extent required to obtain Bankruptcy Court approval of this Settlement Agreement; (ii) to the appropriate person or entity pursuant to court order; or (iii) to the appropriate person or entity in the event the James Hoyer Defendants default in their payment obligations under this Settlement Agreement, but only to the extent reasonably necessary to support the non-dischargeability of the James Hoyer Defendants' payment obligations to Yanchunis.

(f)	The repayment of the Settlement Amount shall be secured by the following collateral:  (i) Hoyer's stock in James Hoyer by a stock pledge agreement in the form attached as *Exhibit B* to the Settlement Agreement; (ii) Hoyer's 49% interest in Nice Reddish Property, L.L.C. to the extent permitted by its governing instruments by the pledge agreement attached as *Exhibit C* to the Settlement Agreement; (iii) a first lien and mortgage on real property owned by Hoyer located at 4301 Place Le Manes, Lutz, FL 33558 in the form attached as *Exhibit D* to the Settlement Agreement, and  Hoyer shall not claim or file any notice that the property is his homestead until the mortgage has been recorded, and Hoyer agrees that any claim of homestead is subordinate to Yanchunis's mortgage; (iv) any trustee of any property in which Hoyer is a beneficiary shall execute documents agreeing to be bound by this Settlement Agreement; and (v) Yanchunis, at his own expense, may record any financing statement to perfect his security interest and liens granted under this Agreement.  Hoyer represents and warrants that the collateral has not been pledged except as set forth in this Agreement.

(g)	The James Hoyer Defendants shall be prohibited from starting a new law firm and/or transferring cases, clients, filed, or assets from James Hoyer.

(h)     Within five (5) Business Days after Yanchunis's receipt of the Initial Settlement Payment, Yanchunis and his counsel shall take all action necessary to effectuate the dismissal of the lawsuit pending against Founders Funding in the State Court, Case No. 2012-CA-13280, with prejudice, with each party to bear their own attorney's fees and costs in accordance with the terms of this Settlement Agreement.[3]

(i)     Claim No. 7 filed by Harrison, which was allowed in the amount of $321,000 pursuant to this Court's Order Granting Debtor's Emergency Motion to Approve Settlement with Nancy Harrison (Doc. No. 191), shall be allowed in the reduced amount of $271,000.00.   Within five (5) business days of the parties signing this Settlement Agreement, the James Hoyer Defendants shall withdraw with prejudice their objection to Claim No. 7 (Doc. No. 172).   Within five (5) business days of the parties signing this Settlement Agreement, Harrison shall file a notice of voluntary dismissal with prejudice of her claims brought in the Adversary Proceeding.

(j)     Yanchunis and the James Hoyer Defendants shall exchange releases for claims other than those set forth in paragraph 16 of the Settlement Agreement.   The James Hoyer Defendants and Harrison shall exchange mutual releases.

(k)     Hoyer hereby exercises his rights as majority shareholder to amend the Bylaws of James Hoyer to waive, with respect to Hoyer only, the 2014 amendment to the James Hoyer Bylaws that requires a departing shareholder to surrender his or her shares upon leaving the employment of the law firm, unless and until the Settlement Amount is paid in full.  The James Hoyer Defendants agree that no further corporate action is needed to make this amendment to the Bylaws effective. The James Hoyer Defendants, including Hoyer in his capacity as controlling shareholder, agree the James Hoyer's

---

[3] Yanchunis has complied with these requirements.

Bylaws shall be amended to provide that Yanchunis shall be entitled to hold stock in the Law Firm despite not being an employee of James Hoyer should Yanchunis foreclose on Hoyer's stock.  The signature of Hoyer and James Hoyer to the Settlement Agreement serves as written action of the shareholders of James Hoyer in lieu of a meeting to effectuate the amendments provided for herein.  The Settlement Agreement shall be placed in the James Hoyer corporate book and identified as a written action of the shareholders of James Hoyer.

(l)      Yanchunis contends that the Settlement Amount should be allocated  as follows:  (i) $428,000 as return of paid-in capital to Founders Funding; (ii) $300,000 as return of paid-in capital in James Hoyer; and (iii) remaining amounts for fees, costs, and other expenses in the Adversary Proceeding and the Bankruptcy Case. The James Hoyer Defendants make no such contention herein.  The James Hoyer Defendants agree that they shall not issue Yanchunis a W-2 or issue a 1099 in an amount in excess of the portion of the Settlement Amount paid to Yanchunis in each tax year.  If the James Hoyer Defendants receive an inquiry from any taxing authority concerning Yanchunis' allocation of the Settlement Amount, the James Hoyer Defendants agree to take no position with the taxing authority as to Yanchunis's allocation.

(m)     Under the Settlement Agreement, Yanchunis stipulates he is no longer a shareholder in James Hoyer and that he is no longer a member in Founders Funding.

(n)     The Court shall retain jurisdiction.

8.     Notwithstanding anything in the Agreement to the contrary, claims described in paragraph 16 shall not be released.

9.     Yanchunis seeks approval of this Motion and the Settlement Agreement pursuant

to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement of a claim.

10.     The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) citing *In re Air Safety Intern.*, L.C., 336 B.R. 843, 852 (S.D. Fla. 2005); *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).

11.     The Court must determine whether a proposed settlement is fair and equitable. *Chira*, 367 B.R. at 896 (S.D. Fla. 2007). The Court must evaluate whether the compromise falls below the "lowest point in the range of reasonableness."  *In re S&I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) citing *In re Bicoastal Corp*., 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993); *Arrow Air*, 85 B.R. at 886 (Bankr. S.D. Fla.1988).

12.     The Eleventh Circuit, in *In re Justice Oaks II, Ltd*., 898 F.2d 1544, 1549 (11th Cir. 1990) provided additional guidance regarding whether a settlement should be approved by establishing a four-part test for a court to consider:  (i) the probability of success in litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

13.     Yanchunis submits that the proposed Settlement Agreement overwhelmingly satisfies the *Justice Oaks* standard.  The Settlement Agreement provides Yanchunis with an opportunity to efficiently settle claims to avoid the further costs and uncertainty of trial.

14.     The James Hoyer Defendants have raised numerous defenses to liability.  While Yanchunis believes that he will prevail, the presence of such defenses increase the complexity

and cost of litigation and create the possibility for appeal.

15.     Yanchunis believes that the expense, inconvenience and delay that would be caused by further litigation would not be in the best interest of the estate.  The settlement was reached during the middle of the trial.  Continued litigation would turn out to be hard fought and costly.

16.     The compromise will resolve issues as to the collectability.

17.     Yanchunis further submits that the release of claims is appropriate.

18.     Therefore, after full and careful consideration, Yanchunis believes that the resolution set forth in the attached Settlement Agreement is in the best interest of the estate.

19.     Yanchunis requests that the Motion be considered on an emergency basic to allow the parties to avoid further litigation costs.

WHEREFORE, Yanchunis respectfully requests the entry of an order in substantially the same form of the order attached as **Exhibit B**, (i) granting this Motion, (ii) approving the terms of the Settlement Agreement, and (iii) granting such other relief as is just and proper.

    */s/ Scott A. Stichter*
Scott A. Stichter (FBN 0710679)
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 E. Madison Street, Suite 200
Tampa, Florida  33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
Email: sstichter@srbp.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion was served on all parties registered with CM/ECF, and by U.S. Mail to all parties in interest shown on the attached matrix on December 19, 2018.

_/s/ Scott A. Stichter_
Scott A. Stichter

13377.2057227v7

## SETTLEMENT AGREEMENT

This Settlement Agreement (the **"Settlement Agreement"** or the **"Agreement"**), effective as of July 19, 2018 (the **"Effective Date"**), is entered into by and between (1) *John A. Yanchunis* (**"Yanchunis"** or the **"Debtor"** and with his bankruptcy estate, the **"Debtor's Estate"**); (2) *James Hoyer, P.A. f/k/a James, Hoyer, Newcomer & Smiljanich, P.A., f/k/a James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A.* (collectively, **"James Hoyer"**); (3) *Founders Funding Group, LLC* (**"Founders Funding"**); (4) *W. Christian Hoyer* (**"Hoyer"**); (5) *John R. Newcomer, Jr.* (**"Newcomer"** and together with James Hoyer, Founders Funding, and Hoyer, the **"James Hoyer Defendants"**), and (6) *Nancy Harrison* (**"Harrison"** together with Yanchunis and each of the James Hoyer Defendants, the **"Settling Parties"**).

The Settling Parties agree as follows:

## RECITALS

The Settling Parties have been engaged in litigation in the United States Bankruptcy Court for the Middle District of Florida (the **"Bankruptcy Court"**) and the Circuit Court for the Thirteenth Judicial Circuit (the **"State Court"**). The Settling Parties have agreed to resolve the claims Yanchunis has brought against the James Hoyer Defendants in the litigation commenced by Yanchunis in the Bankruptcy Court, Adversary Proceeding No. 8:17-ap-00141-MGW (the **"Adversary Proceeding"**); the claims brought by Yanchunis in the State Court, excluding the surviving claims described in paragraph 16 of this Agreement; any and all claims between Harrison and the James Hoyer Defendants; and claims between the James Hoyer Defendants and Yanchunis, excluding the surviving claims described in paragraph 16 of this Agreement.

## TERMS AND CONDITIONS OF AGREEMENT

1.  **Recitals**. The foregoing recitals are true and incorporated as a part of this Settlement Agreement.

2.  **Liability of the James Hoyer Defendants**. The James Hoyer Defendants shall be jointly and severally liable, subject to the provisions of paragraph 5 below, to pay Yanchunis the amount of One Million Two Hundred Twenty-Five Thousand Dollars ($1,225,000.00) (the **"Settlement Amount"**).

3.  **Payment**. The James Hoyer Defendants agree to pay to Yanchunis, in U.S. Dollars, the Settlement Amount. Each installment of the Settlement Amount as set forth in Paragraph 4 of this Agreement shall be made payable to Stichter Riedel Blain & Postler, P.A. Trust Account and delivered to Stichter Riedel Blain & Postler, P.A., ATTN: Scott A. Stichter, 110 E. Madison Street, Suite 200, Tampa, Florida 33602, or in accordance with wire transfer instructions provided in writing by Yanchunis to the James Hoyer Defendants and their counsel prior to the execution of the Settlement Agreement.

4.  **Payment of Settlement Amount in Installments**. The Settlement Amount shall be paid as follows:

    a. $500,000 on or before August 18, 2018 (the "**Initial Settlement Payment**"); which has been paid.

    b. The balance of the Settlement Amount in the amount of $725,000 shall accrue interest at the rate of five percent (5%) per annum and shall be paid as follows:

        i. On or before July 19, 2019, the James Hoyer Defendants shall pay $362,500 plus accrued interest;

        ii. On or before July 19, 2020, the James Hoyer Defendants shall pay $362,500 plus accrued interest; and

    c. There shall be no pre-payment penalty.  In the event that the Settlement Amount is pre-paid, interest shall be calculated through the date of any pre-payment.

    5.    **Release of Newcomer from Joint and Several Liability**.  Upon the receipt of the Initial Settlement Payment, Newcomer shall be released from the joint and several liability for the payment of the balance of the Settlement Amount.

    6.    **Judgment Upon Default**.  In the event of a failure to pay any amounts due under the Settlement Agreement, Yanchunis shall provide the James Hoyer Defendants and their counsel with notice of default by email to: paul@mcintyrefirm.com, choyer@jameshoyer.com, sestes@jameshoyer.com, mstanton@sclawyergroup.com, and jnewcomer@aol.com.  Yanchunis shall provide the James Hoyer Defendants the opportunity to cure such default within five (5) business days from the notice of default.  In the event that the outstanding payment is not made within five (5) business days of the notice, Yanchunis may seek the entry of a judgment in the amount of $2.4 million less payments made under the Settlement Agreement by filing an affidavit of default, with the only defenses available to the James Hoyer Defendants being whether the delinquency existed or was cured.

    7.    **Non-Dischargeability of Settlement Amount**.  The James Hoyer Defendants stipulate and agree that the amounts owed under the Settlement Amount and the $2.4 million judgment referenced in paragraph 6 above shall be non-dischargeable.  Simultaneously with the execution of this Settlement Agreement, the James Hoyer Defendants have executed a statement of facts (the "**Fact Stipulation**"), which they will submit to the Court in camera and ex parte for approval in connection with the filing of a motion to approve the Settlement Agreement.  If approved by the Court, the Fact Stipulation shall be filed under seal.  The James Hoyer Defendants agree not to contest any matters set forth in the Fact Stipulation.  The order approving this Settlement and the James Hoyer Defendants agree to provide additional statements if the Court determines the Fact Stipulation is insufficient to make a finding that the Settlement Amount is non-dischargeable.  The contents of the Fact Stipulation shall not be disclosed to any person or entity, except: (i) to the Court to the extent required to obtain Bankruptcy Court approval of this Settlement Agreement; (ii) to the appropriate person or entity pursuant to court order; or (iii) to the appropriate person or entity in the event the James Hoyer Defendants default in their payment obligations under this Settlement Agreement, but only to the extent reasonably necessary to support the non-dischargeability of the James Hoyer Defendants' payment obligations to Yanchunis.

Exhibit A

8.   **Collateral**.  Hoyer pledges the following collateral to secure payment of the Settlement Amount:

      a.    Hoyer's stock in James Hoyer by executing a stock pledge agreement in the form attached as **Exhibit B** to this Agreement;

      b.    Hoyer's 49% interest in Nice Reddish Property, L.L.C., by executing a pledge agreement in the form attached as **Exhibit C** to this Agreement;

      c.    The real property owned by Hoyer located at 4301 Place Le Manes, Lutz, FL 33558 (the "**Place Le Manes Property**").   Until the Settlement Amount is paid in full, the Place Le Manes Property will be subject to the first mortgage in favor of Yanchunis in the form attached as **Exhibit D** to this Agreement.  Hoyer shall not claim or file any notice that the Place Le Manes Property is his homestead until the mortgage has been recorded, and Hoyer agrees that any claim of homestead as to the Place Le Manes Property is subordinate to Yanchunis's mortgage.

      d.    To the extent it is determined that Hoyer has an interest in a trust, any trustee of any property in which Hoyer is a beneficiary shall execute documents agreeing to be bound by this Settlement Agreement for the purpose of collection in the event of a default.

      e.    Yanchunis, at his own expense, is authorized and may record any financing statement to perfect his security interest and liens granted under this Agreement.

9.   **Warranties and Representations**.  Hoyer warrants and represents that, to the best of his knowledge, the collateral has not been pledged except as set forth in this Agreement. Hoyer further warrants and represents that he does not have an interest in a trust or trusts.

10.   **Prohibition against starting new law firm**.  The James Hoyer Defendants shall be prohibited from starting a new law firm and transferring cases, clients, files, or assets from James Hoyer to that new law firm.  This prohibition cannot and shall not prevent any individual attorney other than Hoyer from leaving the employment of James Hoyer and pursuing gainful employment elsewhere or on his or her own, and shall not preclude any client of the James Hoyer firm from exercising the election rights provided to them pursuant to the Rules Regulating the Florida Bar, nor shall it preclude James Hoyer from changing its name.

11.   **Reduction and Dismissal of Harrison Claims**.  Claim No. 7 filed by Harrison, which was allowed in the amount of $321,000 pursuant to this Court's Order Granting Debtor's Emergency Motion to Approve Settlement with Nancy Harrison (Doc. No. 191), shall be allowed in the reduced amount of $271,000.  In consideration for this reduction, the James Hoyer Defendants and Harrison shall receive the benefit of the mutual general releases set forth in this Agreement.  Harrison and Yanchunis have previously released claims between them pursuant to a prior settlement agreement.  Within five (5) business days of the parties signing this Settlement Agreement, the James Hoyer Defendants shall withdraw with prejudice their objection to Claim No. 7 (Doc. No. 172).  Within five (5) business days of the parties signing this Settlement

Exhibit A

Agreement, Harrison shall file a notice of voluntary dismissal with prejudice of her claims brought in the Adversary Proceeding.

12.    **Effective Date of Agreement**.  The Settling Parties acknowledge and agree that the effective date of this Settlement Agreement shall be the Effective Date defined and set forth in the preamble to this Settlement Agreement; provided, however, that a condition subsequent shall be Bankruptcy Court Approval.  Upon execution of this Agreement, Yanchunis shall file a motion to approve the Agreement in the form attached as **Exhibit E**.

13.    **Dismissal with Prejudice.**  Within five (5) business days after Yanchunis's receipt of the Initial Settlement Payment, Yanchunis and his counsel shall take all action necessary to effectuate the dismissal of the lawsuit pending against Founders Funding in the State Court, Case No. 2012-CA-13820, with prejudice, with each party to bear their own attorney's fees and costs in accordance with the terms of this Settlement Agreement.  Yanchunis shall also dismiss with prejudice the claims in Counts 3-5 that were previously dismissed without prejudice in the Wage Claim Litigation (as defined in paragraph 18 below).  The Parties acknowledge that Yanchunis has complied with the obligations to file documents in the state court proceeding.  Yanchunis and his counsel shall dismiss all claims in the Adversary Proceeding within five (5) days of the execution of this Agreement.

14.    **Mutual Release between Yanchunis and the James Hoyer Defendants.**  Except as provided in paragraph 16 of this Agreement, Yanchunis and the James Hoyer Defendants hereby release each other of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, damages, judgments, executions, in law or in equity, which either of them ever had or which any personal representative, successor, heir or assign of either of them hereafter has, against each other, for, upon or by any reason or matter, cause or thing whatsoever, for which all damages have accrued as of the moment immediately prior to the effectiveness of this Agreement on its Effective Date (the **"Released Claims"**).  The Released Claims shall not include those claims excluded from Released Claims in paragraph 16 of this Agreement or any obligations under or claims arising or resulting from this Settlement Agreement.

In addition and not in limitation of the foregoing mutual release and except as provided in paragraph 16, no Settling Party or any successor in interest identified in this section will sue or bring any action in law or equity, including but not limited to an action in any court, forum, or arbitration proceeding whether by original process or demand, counterclaim, cross-claim, third-party process, impleader, claim for indemnity or contribution or otherwise against any other Settling Party or any successor in interest identified in this section for any claim accruing on or before the Effective Date of this Agreement, including without limitation, any action arising from, referring to, relating to, or in connection with, any of the mutually released claims.  This provision may be pleaded as a complete defense to, and may be used as a basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or maintained in breach of this Settlement Agreement, excluding only the obligations under this Settlement Agreement. The term of this covenant not to sue shall be the longer of six years and one day or the expiration of any applicable statute of limitations plus one day beginning on the date this Settlement Agreement becomes binding, irrevocable, and non-appealable.

4

Exhibit A

15.    **Mutual Release between Harrison and the James Hoyer Defendants**. Harrison and the James Hoyer Defendants hereby release each other of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, damages, judgments, executions, in law or in equity, which either of them ever had or which any personal representative, successor, heir or assign of either of them hereafter has, against each other, for, upon or by any reason or matter, cause or thing whatsoever, for which all damages have accrued as of the moment immediately prior to the effectiveness of this Agreement on its Effective Date (the "**Released Claims**").

In addition and not in limitation of the foregoing mutual release, no Settling Party or any successor in interest identified in this section will sue or bring any action in law or equity, including but not limited to an action in any court, forum, or arbitration proceeding whether by original process or demand, counterclaim, cross-claim, third-party process, impleader, claim for indemnity or contribution or otherwise against any other Settling Party or any successor in interest identified in this section for any claim accruing on or before the Effective Date of this Agreement, including without limitation, any action arising from, referring to, relating to, or in connection with, any of the mutually released claims. This provision may be pleaded as a complete defense to, and may be used as a basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or maintained in breach of this Settlement Agreement, excluding only the obligations under this Settlement Agreement. The term of this covenant not to sue shall be the longer of six years and one day or the expiration of any applicable statute of limitations plus one day beginning on the date this Settlement Agreement becomes binding, irrevocable, and non-appealable.

16.    **No Release of Certain Remaining Asserted Claims, and all Existing or Potential Defenses, Set-Offs, or Recoupments, in Wage Claim Litigation**. Notwithstanding anything in this Agreement to the contrary, wage/compensation claims asserted by Yanchunis in Counts 1 and 2 the Second Amended Complaint in Case 2012-CA-3884 pending in State Court (the "**Wage Claim Litigation**"), as may be amended, and any defenses, claims, or rights of set-off or recoupment that have been or may be brought by the James Hoyer Defendants in the Wage Claim Litigation are excluded from the releases, among other exclusions. Nothing in this Agreement shall constitute a waiver of Yanchunis's ability to object to such defenses or claims for set-off or recoupment. In the releases above, Yanchunis releases all other non-wage/non-compensation claims or potential non-wage/non-compensation claims against the James Hoyer Defendants up to the moment immediately prior to the effectiveness of this Agreement on the Effective Date, including without limitation, non-wage/non-compensation claims that have been or could have been brought in the Wage Claim Litigation, including without limitation, claims previously brought in Counts 3-5 of the Second Amended Complaint, and shall file a notice or stipulation of dismissal with prejudice of Counts 3-5 of the Second Amended Complaint. Yanchunis may amend the Second Amended Complaint in the Wage Claim Litigation so long as the amendments do not bring new legal claims and relate to the same nucleus of operative facts as those alleged in Counts 1 and 2.

17.    **Termination of Assignment**. The Assignment executed on August 26, 2015 by Harrison in favor of James Hoyer shall be null and void. On August 26, 2015, Assignor Harrison

5

23.   **Prevailing Party Fees**.  The prevailing party shall be entitled to recover their reasonable costs and attorney's fees, at both the trial and appellate levels, in any litigation concerning this Agreement.  The prevailing party shall be entitled to recover their attorneys' fees incurred in connection with any determination of entitlement to and the amount of fees recoverable pursuant to this provision.

24.   **Authority.**  The Settling Parties represent and warrant that they have the authority to enter into this Settlement Agreement on behalf of any respective party they are representing or on whose behalf they are claiming to act.

25.   **Governing Law**.  This Settlement Agreement shall be interpreted under and governed by the internal laws of the State of Florida.

26.   **Jurisdiction and Venue**.  The Settling Parties acknowledge that a substantial portion of the negotiations, anticipated performance, and execution of this Settlement Agreement occurred in Hillsborough County, Florida.  The disputed claims arose in, and a significant portion of the conduct relating to the disputed claims addressed in this Settlement Agreement took place in Hillsborough County, Florida.  Any civil action or legal proceeding arising out of or relating to this Settlement Agreement must be brought in the Bankruptcy Court, or solely in the event that the Bankruptcy Court lacks jurisdiction, must be brought in the courts of record of the State of Florida in Hillsborough County or the United States District Court, Middle District of Florida.

27.   **Advice of Counsel and Independent Investigation**.   The Settling Parties represent and warrant that they have read and understood this Settlement Agreement.  Further, the Settling Parties hereby execute this Settlement Agreement voluntarily and upon their own judgment and the advice of counsel, and solely for the consideration herein.  Each of the parties expressly accepts and assumes the risk that if any fact or circumstances is found, suspected or claimed hereafter to be other than, or different from, the facts or circumstances now believed to be true, this Settlement Agreement shall be and remain effective notwithstanding any such difference in any such facts or circumstances.  All parties waive any right or action to rescind, nullify, reform, or collaterally attack the terms of this Settlement Agreement.  All parties waive any right to appeal any order approving this Settlement Agreement.

28.   **Binding Effect**.  All of the terms and provisions of this Settlement Agreement shall be binding upon, inure to the benefit of, and be enforceable by the Settling Parties and their respective legal representatives, successors and permitted assigns, whether so expressed or not.

29.   **No Construction Against Drafter**.  The Settlement Agreement is a result of negotiations between Yanchunis, Harrison, and the James Hoyer Defendants and their respective counsel.  Accordingly, the fact that counsel for one party or another may have drafted any portion this Settlement Agreement is immaterial, and this Settlement Agreement shall not be strictly construed against any party.

Exhibit A

30.    **Amendments**.    The provisions of this Settlement Agreement may not be amended, supplemented, canceled, deleted, modified, waived or changed orally, but only by a writing signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought and making specific reference to this Settlement Agreement.

31.    **Entire Settlement Agreement**.    This Settlement Agreement represents the entire understanding and agreement between the Settling Parties with respect to the subject matter of this Agreement and supersedes all other negotiations, understandings and representations (if any) made by and between such parties.

32.    **Counterparts**.    This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.    A hand-written signature on this Settlement Agreement is sufficient if transmitted by email or facsimile.

33.    **Settlement Agreement Enforcement**. The releases as set forth in Paragraphs 14 above shall not release or discharge any right or obligation of the Settling Parties to comply with or enforce the terms of this Settlement Agreement.

**[SIGNATURE PAGES FOLLOW]**

Exhibit A

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the Effective Date as written above.

**FOR YANCHUNIS:**

WITNESSES:

_____
Signature

_____          _____
JOHN A. YANCHUNIS, SR.

_____
Printed Name

_____
Signature

_____
Printed Name

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the Effective Date as written above.

**FOR JAMES HOYER:**

WITNESSES:                                        JAMES HOYER, P.A.[1]

_____          _____
Signature                                        Authorized Signer

_____          _____
Printed Name                                     Printed Name

_____          _____
Signature                                        Title

_____
Printed Name

9

1  Pursuant to Court Order [Doc. No. 208], James Hoyer, P.A. has been ordered to execute and deliver signature pages before December 25, 2018.  The Debtor will file those signature pages with the Court when received.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the Effective Date as written above.

**FOR FOUNDERS FUNDING:**

WITNESSES:                                          FOUNDERS FUNDING GROUP, LLC

_____          _____
Signature                                          Authorized Signer

_____          _____
Printed Name                                       Printed Name

_____          _____
Signature                                          Title

_____
Printed Name

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the Effective Date as written above.

**FOR HOYER:**

WITNESSES:

_____          _____
Signature                                          W. CHRISTIAN HOYER

_____
Printed Name

_____
Signature

_____
Printed Name

10
Exhibit A

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the Effective Date as written above.

**FOR NEWCOMER:**

WITNESSES:

_Renee Elrod_
Signature

_Renee Elrod_
Printed Name

_Amber Tadlock_
Signature

_Amber Tadlock_
Printed Name

_____
JOHN R. NEWCOMER, JR.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the Effective Date as written above.

**FOR HARRISON:**

WITNESSES:

_____
Signature

_____
Printed Name

_____
Signature

_____
Printed Name

_____
NANCY HARRISON

11

Exhibit A

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the Effective Date as written above.

**FOR NEWCOMER:**

WITNESSES:

_____
Signature

JOHN R. NEWCOMER, JR.

_____
Printed Name

_____
Signature

_____
Printed Name

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the Effective Date as written above.

**FOR HARRISON:**

WITNESSES:

_____
Signature

NANCY HARRISON

_____
Printed Name

_____
Signature

_____
Printed Name

11

Exhibit A

13377.2056130v17

12

Exhibit A

# EXHIBIT A

**Intentionally Omitted**

# EXHIBIT B

Exhibit A

## AGREEMENT OF PLEDGE OF STOCK

THIS AGREEMENT OF PLEDGE OF STOCK (this "Agreement") is made this ____ day of July 2018, by and between John A. Yanchunis, individually (hereinafter "Lender"), and W. Christian Hoyer, individually (hereinafter "Hoyer").

## RECITALS

A.    Hoyer owns all of the right, title, and interest in and to _____ (____) shares of stock (the "Stock") of James Hoyer, P.A., a Florida corporation, f/k/a James, Hoyer, Newcomer, Smiljanich, P.A., f/k/a James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A. (the "Company").

B.    Hoyer desires to cause Lender to enter into that certain Settlement Agreement dated July ___, 2018, between and among Lender, Hoyer, James Hoyer, P.A., a Florida corporation, f/k/a James, Hoyer, Newcomer, Smiljanich, P.A., f/k/a James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A., Founders Funding Group, LLC, a Florida limited liability company, John R. Newcomer, individually, and Nancy Harrison, individually (the "Settlement Agreement").

C.    In order to induce Lender to enter into the Settlement Agreement, Hoyer desires to pledge the Stock in favor of Lender as additional security for the payment and performance of the obligations under the Settlement Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Hoyer and Lender hereby covenant and agree as follows:

## TERMS, COVENANTS AND CONDITIONS

1.    <u>Pledge of Stock.</u>  Hoyer hereby pledges, transfers and assigns to Lender, his successors and assigns, all of the rights, title and interest of Hoyer in and to the Stock and all of the dividends and/or other income arising from or relating to the Stock for the purpose of securing performance and discharge of each term, covenant and condition of Hoyer contained herein and of the James Hoyer Defendants in the Settlement Agreement and any other agreement relating to or arising in connection with the Settlement Agreement (hereinafter collectively referred to as "other agreements").

2.    <u>Payment in Full.</u>  Upon the payment and performance of all obligations under the Settlement Agreement by the James Hoyer Defendants, this Agreement shall terminate.

3.    <u>Delivery of Stock and Filings.</u>  To perfect the pledge of the Stock pursuant to this Agreement, Hoyer shall immediately deliver to Lender all of the Stock, which shall be retained by Lender until this Agreement is assigned or otherwise released. Hoyer's failure to so deliver the Stock shall constitute a default under the Settlement Agreement. Further, Hoyer hereby authorizes Lender to file financing statements reflecting Lender's security interest in the Stock and any other documents necessary or desirable to perfect or otherwise

protect or maintain the security interest and lien in favor of Lender granted herein.

4. <u>Rights Pledged and Reserved.</u>  The rights pledged and assigned hereunder include, without limitation, all of Hoyer's rights and powers to sell, transfer, assign, pledge or otherwise encumber the Stock; provided, however, that Hoyer shall retain all voting rights relating to the Stock.  Any stock or subscription rights, as well as stock or liquidating dividends, or any other property that Hoyer may hereafter become entitled to receive in connection with the Stock, shall automatically become part of the Stock and upon receipt by Hoyer, will be delivered immediately to Lender, with any appropriate endorsement or assignment of Stock powers reasonably requested by Lender.  Lender shall not be under any duty or obligation to make or give Hoyer notice of, or exercise any, subscription rights or privileges, or any rights or privileges to exchange, convert or redeem the Stock.

5. <u>Defensive Actions.</u>  At Hoyer's sole cost and expense, Hoyer shall appear in and defend any action growing out of or in any manner connected with the ownership rights in the Stock.

6. <u>Acceleration.</u>  In addition to any cause set forth in the Settlement Agreement and other agreements relating to same, all obligations as set forth in the Settlement Agreement shall become due, at the option of Lender, after any attempt by Hoyer to exercise any of the assigned rights described in paragraph 4 hereinabove, or after any default by Hoyer hereunder.

7. <u>Remedies of Lender.</u>  After any attempt by Hoyer to exercise any of the assigned rights described in paragraph 4 hereinabove, or after any default by the James Hoyer Defendants in the performance of any other obligation under the Settlement Agreement or arising from same, Lender, at its option, without notice, either in person or by agent, with or without bringing any action or proceeding, or by a receiver to be appointed by a court, may foreclose on the Stock or do any other acts which Lender deems proper to protect the security hereof.  The exercise of any of the remedies of Lender shall not cure or waive any default or waive, modify or affect any notice of default under any other agreements, or invalidate any acts done pursuant to such notice.  The failure of Lender to elect any remedy provided in this Agreement shall not constitute a waiver of such right thereafter.

8. <u>Representations and Warranties.</u>  Hoyer hereby warrants and represents to Lender as follows:

   a.  Hoyer has not executed any prior pledge, assignment or transfer of any of his right in or to the Stock;

   b.  Hoyer has not done anything which might prevent Lender from, or limit Lender in operating under, any of the provisions hereof;

   c.  There exist no conditions upon Hoyer's ownership of the Stock, nor any prohibitions

2

Exhibit A

against, or conditions by the Company, regarding the pledge of the Stock;

d.   Hoyer is the sole owner of the Stock; said Stock is free and clear of all liens and encumbrances; and Hoyer has good and unrestricted right to sell and transfer the same as aforesaid; and

e.   No proceedings in bankruptcy are pending against Hoyer and no adjudication in bankruptcy has been entered against Hoyer since the Stock was purchased and the Stock is not subject to any assignment for the benefit of creditors.

9.   <u>Power of Attorney.</u>   For the mutual covenants set forth herein and other good and valuable consideration, the receipt and adequacy of which is acknowledged, Hoyer hereby irrevocably appoints Lender, as his attorney-in-fact, coupled with an interest, to execute, deliver, and acknowledge any and all documents, instruments, and assignment to preserve, maintain, protect, perfect, transfer, or foreclose on the security interest granted herein in the Stock and to receive, endorse, and negotiate all checks, drafts, money orders arising from the Stock and to compromise, defend, sue on, enforce, and collect all rights and sums arising under the Stock.   The power of attorney granted by this Section shall not be affected by Hoyer's disability, incompetency, incapacity or death as, by his execution hereof, it is shall be deemed to be Hoyer's intent that this Agreement shall be exercisable notwithstanding his subsequent disability, incompetency, incapacity or death and this Agreement shall terminate only when the obligations as set forth in the Settlement Agreement have been performed and paid in full.

10.   <u>Hold Harmless.</u>   Lender shall incur no liability from any action taken by it in good faith, and Hoyer agrees to hold Lender harmless from and against any and all loss, damage, liability, expense, cost and attorneys' fees which Lender may incur in connection with the Stock.

11.   <u>Successors and Assigns.</u>   This Agreement shall be binding upon and inure to the benefit of the successors, assigns and transferees of the parties hereto.

12.   <u>Attorneys' Fees.</u>   In the event either party to this Agreement commences any action or proceeding against the other party by reason of any breach or claimed breach of any provisions of this Agreement, the person prevailing in such action or proceeding shall be entitled to recover from the other party or parties reasonable attorneys' fees and costs, whether or not such proceeding or action proceeds to judgment.

13.   <u>Further Assurances.</u>   Each party hereto shall perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Agreement.

14.   <u>Construction.</u>   Whenever used in this Agreement, the singular number shall include the

3

plural, the plural number shall include the singular, the masculine gender shall include the feminine and the neuter, and vice versa.

15.    <u>Severability.</u>  If any term, provision, covenant or condition of the Agreement is held by a court to be invalid, void or unenforceable, the remainder of this Agreement shall remain in full force and effect and shall in no way be impaired, affected or invalidated.

16.    <u>Conflict of Terms.</u>  In case of any conflict between the terms of this Agreement and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern and control.

[Signature page follows]

4

Exhibit A

"Lender"                                    "Hoyer"

_____            _____
John A. Yanchunis                           W. Christian Hoyer

STATE OF FLORIDA
COUNTY OF Hillsborough

     The foregoing instrument was acknowledged before me this 29th day of ~~July,~~ October 2018, by John A. Yanchunis. He is personally known to me or has produced _____ as identification.


_____
Notary Public
Print Name _____

VICKIE L. GERLACH
MY COMMISSION # FF 200922
EXPIRES: March 16, 2019
Bonded Thru Notary Public Underwriters

STATE OF FLORIDA
COUNTY OF _____

     The foregoing instrument was acknowledged before me this _____ day of July, 2018, by W. Christian Hoyer. He is personally known to me or has produced _____ as identification.


_____
Notary Public
Print Name:    _____

5

Exhibit A

# EXHIBIT C

## AGREEMENT OF PLEDGE OF INTEREST
## IN LIMITED LIABILITY COMPANY

THIS AGREEMENT OF PLEDGE OF INTEREST IN LIMITED LIABILITY COMPANY (this "Agreement") is made this ____ day of July, 2018, by and between John A. Yanchunis, individually (hereinafter "Lender"), and W. Christian Hoyer, individually (hereinafter "Hoyer").

### RECITALS

A. Hoyer owns all of the right, title, and interest in and to a forty-nine percent (49.0%) interest (the "LLC Interest") in Nice Reddish Property, LLC, a Florida limited liability company (the "Company").

B. Hoyer desires to cause Lender to enter into that certain Settlement Agreement dated July ___, 2018, between and among Lender, Hoyer, James Hoyer, P.A., a Florida corporation, f/k/a James, Hoyer, Newcomer, Smiljanich, P.A., f/k/a James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A., Founders Funding Group, LLC, a Florida limited liability company, John R. Newcomer, individually, and Nancy Harrison, individually (the "Settlement Agreement").

C. In order to induce Lender to enter into the Settlement Agreement, Hoyer desires to pledge the LLC Interest in favor of Lender as additional security for the payment and performance of the obligations under the Settlement Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Hoyer and Lender hereby covenant and agree as follows:

### TERMS, COVENANTS AND CONDITIONS

1.  Pledge of LLC Interest.  Hoyer hereby pledges, transfers and assigns to Lender, his successors and assigns, all of the rights, title and interest of Hoyer in and to the LLC Interest and all of the dividends and/or other income arising from or relating to the LLC Interest for the purpose of securing performance and discharge of each term, covenant and condition of Hoyer contained herein and of the James Hoyer Defendants in the Settlement Agreement, and any other agreements relating to or arising in connection with the Settlement Agreement (hereinafter collectively referred to as "other agreements").

2.  Payment in Full.  Upon the payment and performance of all obligations under the Settlement Agreement by the James Hoyer Defendants, this Agreement shall terminate.

3.  Delivery of LLC Interest Certificates and Filings.  To perfect the pledge of the LLC Interest pursuant to this Agreement, Hoyer shall immediately deliver to Lender all of the certificates evidencing the LLC Interest, which shall be retained by Lender until this Agreement is reassigned or otherwise released.  Hoyer's failure to so deliver the certificates evidencing the LLC Interest shall constitute a default under the Settlement Agreement.  Further, Hoyer hereby authorizes Lender to file financing statements reflecting Lender's security interest in

Exhibit A

the LLC Interest and any other documents necessary or desirable to perfect or otherwise protect or maintain the security interest and lien in favor of Lender granted herein.

4.   Rights Pledged and Reserved. The rights pledged and assigned hereunder include, without limitation, all of Hoyer's rights and powers to sell, transfer, assign, pledge or otherwise encumber the LLC Interest; provided, however, that Hoyer shall retain all voting rights relating to the LLC Interest. Any LLC Interest or subscription rights, as well as LLC Interest or liquidating dividends, or any other property which Hoyer may hereafter become entitled to receive in connection with the LLC Interest, shall automatically become part of the LLC Interest and, upon receipt by Hoyer, will be delivered immediately to Lender along with any appropriate endorsement or assignment of LLC Interest reasonably requested by Lender. Lender shall not be under any duty or obligation to make or give Hoyer notice of, or exercise any, subscription rights or privileges, or any rights or privileges to exchange, convert or redeem the LLC Interest.

5.   Defensive Actions. At Hoyer's sole cost and expense, Hoyer shall appear in and defend any action growing out of or in any manner connected with the ownership rights in the LLC Interest.

6.   Acceleration. In addition to any cause set forth in the Settlement Agreement and other agreements relating to same, all obligations as set forth in the Settlement Agreement shall become due, at the option of Lender, after any attempt by Hoyer to exercise any of the assigned rights described in paragraph 4 hereinabove, or after any default by Hoyer hereunder.

7.   Remedies of Lender. After any attempt by Hoyer to exercise any of the assigned rights described in paragraph 4 hereinabove, or after any default by the James Hoyer Defendants in the performance of any other obligation under the Settlement Agreement or arising from same, Lender, at its option, without notice, either in person or by agent, with or without bringing any action or proceeding, or by a receiver to be appointed by a court, may foreclose on the LLC Interest or do any other acts which Lender deems proper to protect the security hereof. The exercise of any of the remedies of Lender shall not cure or waive any default or waive, modify or affect any notice of default under any other agreements, or invalidate any acts done pursuant to such notice. The failure of Lender to elect any remedy provided in this Agreement shall not constitute a waiver of such right thereafter.

8.   Representations and Warranties. Hoyer hereby warrants and represents as follows:

   a.   Hoyer has not executed any prior pledge, assignment or transfer of any of its right in or to the LLC Interest;

   b.   Hoyer has not done anything which might prevent Lender from, or limit Lender in operating under, any of the provisions hereof;

   c.   There exists no conditions upon Hoyer's ownership of the LLC Interest, nor any

Exhibit A

prohibitions against, or conditions by the Company, regarding the pledge of the LLC Interest;

d.      Hoyer is the sole and lawful owner of the LLC Interest; said LLC Interest is free and clear of all liens and encumbrances; and Hoyer has good and unrestricted right to sell and transfer the same as aforesaid; and

e.      No proceedings in bankruptcy are pending against Hoyer and no adjudication in bankruptcy has been entered against Hoyer since the LLC Interest was purchased and this LLC Interest is not subject to any assignment for the benefit of creditors.

9.    <u>Power of Attorney.</u> For the mutual covenants set forth herein and other good and valuable consideration, the receipt and adequacy of which is acknowledged, Hoyer hereby irrevocably appoints Lender as his attorney-in-fact, coupled with an interest, to execute, deliver, and acknowledge any and all documents, instruments, and assignment to preserve, maintain, protect, perfect, transfer, or foreclose on the security interest granted herein in the LLC Interest and to receive, endorse, and negotiate all checks, drafts, money orders arising from the LLC Interest and to compromise, defend, sue on, enforce, and collect all rights and sums arising under the LLC Interest. The power of attorney granted by this Section shall not be affected by Hoyer's disability, incompetency, incapacity or death as, by his execution hereof, it is shall be deemed to be Hoyer's intent that this Agreement shall be exercisable notwithstanding his subsequent disability, incompetency, incapacity or death and this Agreement shall terminate only when the obligations as set forth in the Settlement Agreement have been performed and paid in full.

10.    <u>Hold Harmless.</u> Lender shall incur no liability from any action taken by it in good faith, and Hoyer agrees to hold Lender harmless from and against any and all loss, damage, liability, expense, cost and attorney's fees which Lender may incur in connection with the LLC Interest.

11.    <u>Successors and Assigns.</u> This Agreement shall be binding upon and inure to the benefit of the successors, assigns and transferees of the parties hereto.

12.    <u>Attorneys' Fees.</u> In the event either party to this Agreement commences any action or proceeding against the other party by reason of any breach or claimed breach of any provisions of this Agreement, the person prevailing in such action or proceeding shall be entitled to recover from the other party or parties reasonable attorneys' fees and costs, whether or not such proceeding or action proceeds to judgment.

13.    <u>Further Assurances.</u> Each party hereto shall perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Agreement.

14.    <u>Construction.</u> Whenever used in this Agreement, the singular number shall include the

3

plural, the plural number shall include the singular, the masculine gender shall include the feminine and the neuter, and vice versa.

15.  <u>Severability.</u>  If any term, provision, covenant or condition of the Agreement is held by a court to be invalid, void or unenforceable, the remainder of this Agreement shall remain in full force and effect and shall in no way be impaired, affected or invalidated.

16.  <u>Conflict of Terms.</u>  In case of any conflict between the terms of this Agreement and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern and control.

[Signature page follows]

4

Exhibit A

"Lender"                                    "Hoyer"


_____            _____
John A. Yanchunis                           W. Christian Hoyer


STATE OF FLORIDA
COUNTY OF _Hillsborough_

    The foregoing instrument was acknowledged before me this _29th_ day of ~~July~~ _October_, 2018, by John A. Yanchunis. He is _personally known to me or has_ produced _____ as identification.


_____
Notary Public
Print Name: _____

VICKIE L. GERLACH
MY COMMISSION # FF 200922
EXPIRES: March 16, 2019
Bonded Thru Notary Public Underwriters


STATE OF FLORIDA
COUNTY OF _____

    The foregoing instrument was acknowledged before me this _____ day of July, 2018, by W. Christian Hoyer. He is personally known to me or has produced _____ as identification.


_____
Notary Public
Print Name: _____

Exhibit A

.

# EXHIBIT D

This instrument prepared by and return to:

B. Michael Bachman, Jr., Esq.
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602

Parcel Identification No.:

U-09-27-18-OIH-000000-00024.0

NOTE TO RECORDER: THIS MORTGAGE AND SECURITY AGREEMENT LIMITS THE LENDER'S RECOVERY TO $725,000.00. THEREFORE, FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $2,537.50 AND FLORIDA NON-RECURRING INTANGIBLE TAXES IN THE AMOUNT OF $1,440.00 ARE BEING PAID UPON RECORDATION OF THIS MORTGAGE AND SECURITY AGREEMENT IN THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA.

## MORTGAGE AND SECURITY AGREEMENT

This Mortgage and Security Agreement (this "Mortgage") is made as of this _____ day of July, 2018, by and between W. Christian Hoyer, individually ("Borrower") and John A. Yanchunis, individually ("Lender"), whose mailing address is _____.

### W I T N E S S E T H :

WHEREAS, Borrower, John R. Newcomer, individually, and James Hoyer, P.A., a Florida corporation, f/k/a James, Hoyer, Newcomer, Smiljanich, P.A., f/k/a James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A. (collectively, the "James Hoyer Defendants") are indebted to Lender in the principal sum of $1,225,000.00 together with interest thereon, as evidenced by that certain Settlement Agreement dated July ____, 2018, between and among Lender, the James Hoyer Defendants, Founders Funding Group, LLC, a Florida limited liability company, and Nancy Harrison, individually (the "Settlement Agreement"), which by reference is made a part hereof to the same extent as though set out in full herein;

NOW, THEREFORE, to secure the performance by the James Hoyer Defendants of all covenants and conditions in the Settlement Agreement and all other instruments securing the obligations set forth in the Settlement Agreement, to secure the performance by Borrower of all covenants and conditions in this Mortgage and in order to charge the properties, interest and rights hereinafter described with such payment and performance and to secure additional advances, amendments and modifications thereof and for and in consideration of the sum of Ten and no/100 Dollars ($10.00), Borrower does hereby mortgage, sell, pledge and assign to Lender and where applicable grant a security interest in:

Exhibit A

THE MORTGAGED PROPERTY

     A.     All of the land in the County of Hillsborough, State of Florida, described on Exhibit "A" attached hereto and made a part hereof, to have and to hold the same, together with all the improvements now or hereafter erected on such property and all fixtures now or hereafter attached thereto, together with each and every tenements, hereditaments, easements, rights, powers, privileges, immunities and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, and also all the estate, right, title, interest, homestead, right of dower, separate estate, property, possession and claim whatsoever in law as well as in equity of Borrower of, in and to the same in every part and parcel thereof unto Lender in fee simple.

     B.     Together with a security interest in all personal property and fixtures affixed to or located on the property described in paragraph (A) hereof.

     C.     Together with all rents, leases, issues, profits, revenue, income, proceeds and other benefits from the property described in paragraph (A) hereof to be applied to the indebtedness secured hereby; provided, however, that permission is hereby given to Borrower so long as no default has occurred hereunder, to collect, receive and use such benefits from the property as they become due and payable, but not in advance thereof.

     D.     All insurance policies and proceeds thereof and all condemnation proceeds, awards, damages, and claims relating to or derived from the property described in paragraphs (A), (B) and (C) hereof.

     E.     Everything referred to in paragraphs (A), (B), (C) and (D) hereof and any additional property hereafter acquired by Borrower and subject to the lien of this Mortgage or any part of these properties is herein referred to as the "Mortgaged Property."

     PROVIDED ALWAYS, that if the James Hoyer Defendants shall pay to Lender the amounts set forth in the Settlement Agreement at the times and in the manner stipulated therein, and in all other instruments securing the obligations set forth in the Settlement Agreement, including any amendments or modifications thereof, and, with respect to Borrower, in this Mortgage, then this Mortgage shall cease and be void, but shall otherwise remain in full force and effect.

     Borrower covenants and agrees with Lender as follows:

     1.     Compliance with Settlement Agreement and Mortgage; Warranty of Title. Borrower shall, and, where applicable, shall cause the James Hoyer Defendants to, comply with all provisions of the Settlement Agreement, this Mortgage and of every other instrument securing the obligations set forth in the Settlement Agreement, and will promptly pay to Lender the principal with interest thereon and all other sums required to be paid by the James Hoyer Defendants under the Settlement Agreement and pursuant to the provisions of this Mortgage and of every other instrument securing the obligations set forth in the Settlement Agreement. Borrower is indefeasibly seized of the Mortgaged Property in fee simple and Borrower has

2

Exhibit A

lawful authority to convey, mortgage and encumber the same as provided by this Mortgage, and does hereby so warrant.

2. <u>Payment of Taxes and Liens.</u>  Borrower shall pay all the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature now on the Mortgaged Property or that hereafter may be imposed, levied or assessed upon this Mortgage or the Mortgaged Property or upon the indebtedness secured hereby.  All such payments to be made when due and payable according to law before they become delinquent and before any interest attaches or any penalty is incurred.  Insofar as any indebtedness is of record the same shall be promptly satisfied and evidence of such satisfaction shall be given to Lender.  Lender may at its option require Borrower to deposit with Lender on the first day of each month, in addition to making payments of principal and interest, until the obligations set forth in the Settlement Agreement are fully paid, an amount equal to one-twelfth (1/12) of the annual taxes and assessments, including but not limited to condominium and homeowner association assessments, payable with respect to the Mortgaged Property.  Such deposits shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Lender, and no interest shall be payable in respect thereof.  Upon demand by Lender, Borrower shall deliver to Lender such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable Lender to pay such taxes and assessments when due.  In the event of default under any of the terms, covenants and conditions in the Settlement Agreement, this Mortgage or any other instrument securing the obligations set forth in the Settlement Agreement to be performed or observed by Borrower and/or the James Hoyer Defendants, Lender may apply to the reduction of the sums secured hereby, in such manner as Lender shall determine, any amount under this paragraph remaining to Borrower's and the James Hoyer Defendants' credit.

3. <u>Insurance.</u>  Borrower shall keep the Mortgaged Property and the improvements now existing or hereafter erected on the Mortgaged Property insured against loss by fire, flood, if the Mortgaged Property is located in a flood zone, other hazards and contingencies in the amount of the full insurable value of the Mortgaged Property during the term of this Mortgage.  Borrower shall pay promptly, when due, any premiums on such insurance.  All insurance shall be carried with companies approved by Lender and the policy and renewals thereof shall be held by Lender and have attached thereto loss payable clauses in favor of and in form acceptable to Lender.  In the event of loss, Borrower shall give immediate notice by mail to Lender, and Lender may make proof of loss if not made promptly by Borrower.  Each insurance company concerned is hereby authorized and directed to make payments for such loss directly to Lender instead of either to Borrower or Borrower and Lender jointly.  Insurance proceeds or any part thereof may be applied by Lender at its option, after deducting therefrom all its expenses including attorney's fees and costs, either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged.  Lender is hereby authorized, at its option, to settle and compromise any claims, awards, damages, rights of action and proceeds, and any other payment or relief under any insurance policy.  In the event of foreclosure of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of the indebtedness secured hereby, all right, title, and interest of Borrower in and to any insurance policies then in force shall pass to the purchaser or grantee.  Lender may at its option require Borrower to deposit with Lender on the first day of each month, in addition to making payments of principal and interest, until the obligations set forth in the Settlement Agreement are fully paid, an amount equal to

3

Exhibit A

one-twelfth (1/12) of the annual premiums for all insurance. Such deposits shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Lender, and no interest shall be payable in respect thereof. Upon demand by Lender, Borrower shall deliver to Lender such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable Lender to pay such premiums when due. In the event of default under any of the terms, covenants and conditions in the Settlement Agreement, this Mortgage or any other instrument securing the obligations set forth in the Settlement Agreement to be performed or observed by Borrower and/or the James Hoyer Defendants, Lender may apply to the reduction of the sums secured hereby, in such manner as Lender shall determine, any amount under this paragraph remaining to Borrower's and the James Hoyer Defendants' credit and any return premium received from cancellation of any insurance policy by Lender upon foreclosure of this Mortgage.

4.   <u>Condemnation.</u>  If the Mortgaged Property or any part thereof shall be damaged or taken through condemnation (which term when used herein shall include any damage or taking by any governmental authority or any other authority authorized by the laws of the State of Florida or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily or permanently, the entire indebtedness and other sums secured hereby shall, at the option of Lender, become immediately due and payable. Lender shall be entitled to all compensation awards, damages, claims, rights of action and proceeds of, or on account of any damage or taking through condemnation and is hereby authorized, at its option, to commence, appear in and prosecute, in its own or Borrower's name, any action or proceeding relating to any condemnation, and to settle and compromise any claim in connection therewith. All such compensation awards, damages, claims, rights of action and proceeds, and any other payments or relief, and the right thereto, are hereby assigned by Borrower to Lender and Lender after deducting therefrom all its expenses including attorney's fees and costs, may release any monies so received by it without affecting the lien of this Mortgage or may apply the same, in such manner as Lender shall determine, to the reduction of the sums secured hereby. Any balance of such monies then remaining shall be paid to Borrower. Borrower agrees to execute such further assignments of any compensation, awards, damages, claims, rights of action and proceeds as Lender may require.

5.   <u>Care of Mortgaged Property.</u>  Borrower shall not remove or demolish any building or other property forming a part of the Mortgaged Property without the written consent of Lender. Borrower shall not permit, commit, or suffer any waste, impairment or deterioration of the Mortgaged Property or any part thereof, and shall keep the same and improvements thereon in good condition and repair. Borrower shall notify Lender in writing within five (5) days of any damage or impairment of the Mortgaged Property. Borrower shall make any changes to the Mortgaged Property required to bring it into compliance with any governmental regulations including, but not limited to the Clean Air Act and the Americans with Disabilities Act. Lender may, at Lender's discretion, have the Mortgaged Property inspected at any time and Borrower shall pay all costs incurred by Lender in executing such inspection. Borrower will not use, generate, manufacture, produce, store, release, discharge or dispose of on, under or about the Mortgaged Property or transport from the Mortgaged Property any Hazardous Substance (as defined in any law, rule or regulation addressing same) or allow any other person or entity to do so. Borrower shall protect, indemnify and hold harmless Lender from and against any and all

4

Exhibit A

loss, damage, cost, expense or liability (including attorney's fees and costs) directly or indirectly arising out of or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of a Hazardous Substance on, under or about the Mortgaged Property including without limitation (i) all foreseeable consequential damages; and (ii) the costs of any required or necessary repair, cleanup or detoxification of the Mortgaged Property and the preparation and implementation of any closure, remedial or other required plans.  This indemnity shall survive the extinguishment of the lien of this Mortgage by foreclosure or action in lieu thereof.

6.    Lender's Right to Make Certain Payments.  In the event Borrower fails to pay or discharge the taxes, assessments, levies, liabilities, obligations and encumbrances, or fails to keep the Mortgaged Property insured or to deliver the policies, premiums paid, or fails to repair the Mortgaged Property as herein agreed, Lender may at its option pay or discharge the taxes, assessments, levies, liabilities, obligations and encumbrances or any part thereof, may procure and pay for such insurance or may make and pay for such repairs.  Lender shall have no obligation on its part to determine the validity or necessity of any payment thereof and any such payment shall not waive or affect any option, lien equity or right of Lender under or by virtue of this Mortgage.  The full amount of each and every such payment shall be immediately due and payable and shall bear interest from the date thereof until paid at the Default Rate, as hereinafter defined, and together with such interest, shall be secured by the lien of this Mortgage.  Nothing herein contained shall be construed as requiring Lender to advance or expend monies for any of the purposes mentioned in this paragraph.

7.    Payment of Expenses.  Borrower shall pay all the costs, charges and expenses, including reasonable attorney's fees, disbursements and cost of abstracts of title, incurred or paid at any time by Lender due to the failure on the part of Borrower promptly and fully to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Settlement Agreement and this Mortgage.  Such costs, charges and expenses, shall be immediately due and payable, whether or not there be notice, demand, attempt to collect, or suit pending.  The full amount of each and any such payment shall bear interest from the date thereof until paid at the Default Rate.  All such costs, charges and expenses so incurred or paid, together with such interest, shall be secured by the lien of this Mortgage and any other instrument securing the obligations set forth in the Settlement Agreement.

8.    After Acquired Property.  The lien of this Mortgage will automatically attach, without further act, to all after acquired property of whatever kind located in or on, or attached to, or used or intended to be used in connection with or in the operation of the Mortgaged Property.

9.    Additional Documents.  At all times this Mortgage is in effect, upon Lender's request, Borrower shall make, execute and deliver or cause to be made, executed and delivered to Lender and, where appropriate, shall cause to be recorded or filed and thereafter to be re-recorded or refiled at such time and in such places as shall be deemed desirable by Lender any and all such further mortgages, instruments of further assurance, certificates and other documents as Lender may consider necessary or desirable in order to effectuate, complete, enlarge, perfect, or to continue and preserve the obligations of Borrower under the Settlement Agreement and this

5

Exhibit A

Mortgage and all other instruments securing the obligations set forth in the Settlement Agreement, and the lien of this Mortgage as a first and prior lien upon all the Mortgaged Property.  Upon any failure by Borrower to do so, Lender may make, execute, record, file, re-record or refile any and all such mortgages, instruments, certificates and documents for and in the name of Borrower.  Borrower hereby irrevocably appoints Lender agent and attorney-in-fact of Borrower to do all things necessary to effectuate or assure compliance with this paragraph.

      10.    <u>Event of Default.</u>  Any one of the following shall constitute an event of default:

      (a)    Failure by the James Hoyer Defendants or Borrower, as applicable, to pay as and when due and payable, any installments of principal or interest due under the Settlement Agreement, or any deposits for taxes and assessments or insurance premiums due hereunder, or any other sums to be paid hereunder or under any other instrument securing the obligations set forth in the Settlement Agreement, and such default shall have continued for a period of time, if any, referred to in the Settlement Agreement after which a late principal or interest payment constitutes an event of default.

      (b)    Failure by the James Hoyer Defendants or Borrower, as applicable, to duly keep, perform and observe any other covenant, condition or agreement in the Settlement Agreement, this Mortgage, any other instrument securing the obligations set forth in the Settlement Agreement or any other instrument collateral to the Settlement Agreement or executed in connection with the sums secured hereby and such default shall have continued for a period of time, if any, referred to in the Settlement Agreement after which a non-monetary default constitutes an event of default.

      (c)    If either Borrower or any of the James Hoyer Defendants:  (i) files a voluntary petition in bankruptcy; (ii) is adjudicated a bankrupt or insolvent; (iii) files any petition or answer seeking or acquiescing in any reorganization, management, composition, readjustment, liquidation, dissolution or similar relief for itself under any law relating to bankruptcy, insolvency or other relief for debtors; (iv) seeks or consents to or acquiesces in the appointment of any trustee, receiver, master or liquidator of itself or of all or any substantial part of the Mortgaged Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof; (v) makes any general assignment for the benefit of creditors; (vi) makes any admission in writing of its inability to pay its debts generally as they become due; or (vii) has a petition filed against them seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state, or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors and a court of competent jurisdiction enters an order, judgment or decree approving said petition, which order, judgment or decree remains unvacated and unstayed for an aggregate of sixty (60) days, whether or not consecutive from the date of entry thereof.

      (d)    Any breach of any warranty or material untruth of any representation of the James Hoyer Defendants or Borrower, as applicable, contained in the Settlement Agreement, this Mortgage or any other instrument securing the obligations set forth in the Settlement Agreement.

(e)     The adoption of any ordinance or regulation which modifies the existing zoning classification of the Mortgaged Property or which diminishes the existing permissible density of the Mortgaged Property.

(f)     Any default under any other mortgage which now or hereafter encumbers the Mortgaged Property.

(g)     Any trustee, receiver or liquidator of all or any substantial part of the Mortgaged Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof, is appointed without the prior written consent of Lender, which appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days whether or not consecutive.

11.     <u>Acceleration.</u>  If an event of default shall have occurred, Lender may declare the outstanding principal amount due and owing under the Settlement Agreement and the interest accrued thereon, and all other sums secured hereby, to be due and payable immediately.  Upon such declaration such principal and interest and other sums shall immediately be due and payable without demand or notice.

12.     <u>Remedies After Default.</u>  Upon an event of default, Lender may proceed by suit or suits at law or in equity or by any other appropriate proceeding or remedy to:  (a) enforce payment of the obligations set forth in the Settlement Agreement or the performance of any term hereof or any other rights; (b) foreclose this Mortgage and to sell, as an entirety or in separate lots or parcels, the Mortgaged Property under the judgment or decree of a court or courts of competent jurisdiction; (c) collect, allocate and use without court direction, all rents, issues, profits, revenue, income and other benefits from the Mortgaged Property without the necessity of appointing a receiver to do so, upon the sworn ex parte motion of Lender that a default has occurred; (d) appoint, without notice to Borrower, a receiver to enter upon and take possession of the Mortgaged Property and to collect all rents, issues, profits, revenue, income, and other benefits thereof and apply the same as a court may direct and such receiver shall have all rights and powers permitted under law, upon the sworn ex parte motion of Lender that a default has occurred, and Borrower does hereby consent to such appointment; and (e) pursue any other remedy available to it including, but not limited to taking possession of the Mortgaged Property without notice or hearing to Borrower.  Lender shall take action either by such proceedings or by the exercise of its power with respect to entry or taking possession, or both, as Lender may determine.

13.     <u>No Waiver.</u>  No delay or omission of Lender to exercise any right, power or remedy accruing upon any event of default shall exhaust or impair any such right, power or remedy or shall be construed to waive any event of default or to constitute acquiescence therein.

14.     <u>Non-Exclusive Remedies.</u>  No right, power or remedy conferred upon or reserved to Lender by the Settlement Agreement, this Mortgage or any other instrument securing the obligations set forth in the Settlement Agreement is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent

7

Exhibit A

and shall be in addition to any other right, power and remedy given hereunder or under the Settlement Agreement, or now or hereafter existing at law, in equity or by statute.

15.    <u>Successors and Assigns Bound.</u>  Whenever one of parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of Borrower or Lender, shall bind and inure to the benefit of their respective heirs, successors and assigns, whether or not so expressed.

16.    <u>Miscellaneous.</u>  In the event that any of the covenants, agreements, terms or provisions contained in the Settlement Agreement, this Mortgage or any other instrument securing the obligations set forth in the Settlement Agreement shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein and in the Settlement Agreement and any other instrument securing the obligations set forth in the Settlement Agreement shall be in no way affected, prejudiced or disturbed thereby.

17.    <u>Attorneys' Fees.</u>  The term "attorneys' fees" as used in this Mortgage includes any and all legal fees of whatever nature including, but not limited to, attorneys' fees, paralegals' fees, legal assistants' fees and all fees resulting from any appeal of an interlocutory order or final judgment or any other appellate proceeding arising out of any litigation, and all fees incurred in connection with a determination of the amount of such fees to which Lender is entitled.

18.    <u>Future Advances.</u>  This Mortgage is given to secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of Lender, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage.  The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed twice the amount of the Settlement Amount (as defined in the Settlement Agreement), plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the Default Rate.

19.    <u>Obligation of Borrower.</u>  Borrower shall pay the cost of releasing or satisfying this Mortgage of record.

20.    <u>No Transfer.</u>  It is understood and agreed by Borrower that as part of the inducement to Lender to make the loan evidenced by the Settlement Agreement, Lender has considered and relied on the credit worthiness and reliability of Borrower.  Borrower covenants and agrees not to sell, convey, transfer, or further encumber any interest in all or any part of the Mortgaged Property without the prior written consent of Lender, and any such sale, conveyance, transfer or encumbrance made without Lender's prior written consent shall be void and shall immediately without any curative period allow Lender to accelerate in accordance with Paragraph 11 hereof.  If any person should obtain an interest in all or any part of the Mortgaged Property pursuant to the execution or enforcement of any lien, security interest or other right,

Exhibit A

whether superior, equal or subordinate to this Mortgage or the lien hereof, such event shall be deemed to be a transfer by Borrower and an event of default hereunder.

21.   <u>Default Rate.</u>   The default rate of interest to be charged hereunder shall be eighteen percent (18%) per annum (the "<u>Default Rate</u>").

22.   <u>Documentary Stamp Tax/Intangible Tax.</u>   Borrower and Borrower's heirs, personal representatives, successors and assigns, indemnify and agree to defend and hold Lender harmless against Florida documentary stamp and intangible taxes, if any, imposed upon Lender by virtue of its execution and acceptance of this Mortgage or the Settlement Agreement, as the same may be amended or modified, including any penalties, interest, and attorney's fees incurred by Lender in connection therewith, and all such charges shall be secured by the lien of this Mortgage, and as from time to time amended, and bear interest at the Default Rate from the date of advance by Lender until paid by Borrower. The provisions of this paragraph shall survive the repayment of the obligations set forth in the Settlement Agreement and the indebtedness evidenced thereby, and satisfaction of this Mortgage, and shall continue for so long as a claim may be asserted by the State of Florida or any of its agencies.

23.   <u>Limitation on Recovery.</u>   The maximum amount that Lender may recover under this Mortgage is $725,000.00

24.   <u>Hazardous Waste.</u>   Borrower warrants and represents to Lender after thorough investigation:

     (a)    That neither Borrower nor any other person to Borrower's knowledge, after reasonable inquiry, has ever used the Mortgaged Property as a facility for the storage, treatment or disposal of any "Hazardous Substances," as that term is hereinafter defined.

     (b)    That the Mortgaged Property is now and at all times hereafter will continue to be in full compliance with all federal, state and local "Environmental Laws" (as that term is defined hereinafter), including but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 USC §9601, <u>et seq.</u>, the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Public Law 99-499, 100 Stat. 1613, the Resource Conservation and Recovery Act ("RCRA") 42 USC §6901, <u>et seq.</u>, the Florida Resource Recovery and Management Act, Section 403.701, <u>et seq.</u>, Florida Statutes, the Pollutant Spill Prevention and Control Act, Sections 376.011-376.17 and 376.19-376.2, Florida Statutes, as the same may be amended from time to time and all ordinances, regulations, codes, plans, orders, and decrees now existing or in the future enacted, promulgated, adopted, entered or issued, both within and outside present contemplation of Borrower and Lender.

     (c)    That (i) as of the date hereof there are no hazardous or toxic materials, substances, wastes or other environmentally regulated substances (including solids or gaseous products and any materials containing asbestos), the presence of which is limited, regulated or prohibited by any state, federal or local governmental authority or

9

agency having jurisdiction over the Mortgaged Property, or which are otherwise known to pose a hazard to health or safety of occupants of the Mortgaged Property, located on, in or under the Mortgaged Property or used in connection therewith, or (ii) Borrower has fully disclosed to Lender in writing the existence, extent and nature of any such hazardous or toxic material waste or other environmentally regulated substance, which Borrower is legally authorized and empowered to maintain on, in or under the Mortgaged Property or use in connection therewith, and Borrower has obtained and will maintain all licenses, permits and approvals required with respect thereto, and is in full compliance with all of the terms, conditions and requirements of such licenses, permits and approvals.

(d)     That Borrower shall notify Lender of any change in the nature or extent of any hazardous or toxic materials, substances or wastes maintained on, in or under the Mortgaged Property or used in connection therewith, and will transmit to Lender copies of any governmental or non-governmental communication, citations, orders, or notices received with respect to any other hazardous materials, substances, wastes or other environmentally regulated substances affecting the Mortgaged Property.

(e)     That Borrower is not aware of, nor has the Borrower received notice of, any past, present or future events, conditions, circumstances, activities, practices, incidents, actions or plans which may interfere with or prevent compliance or continued compliance with Environmental Laws or any ordinance, regulation, code, plan, order, decree, judgment, injunction, notice or demand letter issued, entered, promulgated or approved thereunder, or which may give rise to any common law or legal liability, or otherwise form the basis of any claim, action, demand, suit, proceeding, hearing, study or investigation, based on or related to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling, or the emission, discharge, release or threatened release into the environment, of any Hazardous Substance.

(f)     That there is no civil, criminal or administrative action, suit, demand, claim, hearing, notice or demand letter, notice of violation, investigation, or proceeding pending or threatened against Borrower or the Mortgaged Property, relating in any way to any Environmental Laws or any regulation, code, plan, order, decree, judgment, injunction, notice or demand letter issued, entered, promulgated or approved thereunder.

(g)     Borrower hereby agrees to indemnify, reimburse, defend and hold harmless Lender, its successors and assigns from and against all demands, claims, civil or criminal actions or causes of action, liens, assessments, civil or criminal penalties or fines, losses, damages, liabilities, obligations, costs, disbursements, expenses or fees of any kind or of any nature (including, without limitation, cleanup costs, attorneys', consultants' or experts' fees and disbursements and costs of litigation at trial and appellate levels) which may at any time be imposed upon, incurred by or asserted or awarded against, Lender directly or indirectly, resulting from: (i) any acts or activities of Borrower, its agents, employees or contractors, at, on or about the Mortgaged Property which contaminate air, soils, surface waters or groundwaters over, on or under the Mortgaged Property; (ii) arising from or out of any Hazardous Substance on, in or under

10

Exhibit A

the Mortgaged Property; (iii) pursuant to or in connection with the application of any Environmental Law to the acts or omissions of Borrower or any other person and any environmental damage alleged to have been caused, in whole or in part, by the transportation, treatment, storage, or disposal of any Hazardous Substance, or (iv) arising from or in relation to the presence, whether past, present or future, of any Hazardous Substances on the Mortgaged Property.

Without limiting the foregoing, this indemnification provision specifically protects Lender against any claim or action from activities described in (i), (ii), (iii) or (iv) above, based in whole or in part upon any environmental statute, rule, regulation or policy, including but not limited to Chapters 403 and 376, Florida Statutes, the Florida Administrative Code, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 USC §9601, et seq., as amended, the Resource Conservation and Recovery Act, 42 USC §6901, et seq., and other laws, whether now in existence or enacted in the future.

Borrower's indemnification obligation hereunder shall be one of strict liability and shall be enforceable without regard to any fault or knowledge of Lender with respect to any act or omission or condition or event which is the basis of the claim under such indemnification obligation. Borrower's obligation under this section shall not be limited to any extent by the term of repayment of the obligations set forth in the Settlement Agreement or other obligations secured hereby, and such obligation shall continue, survive and remain in full force and effect notwithstanding payment in full or other satisfaction or release of said Settlement Agreement (and other obligations secured hereby) and this Mortgage, or any foreclosure under this Mortgage, or any delivery of a deed in lieu of foreclosure. The provisions of this Section shall be deemed to survive and continue in full force and effect after any foreclosure or other proceeding by which Lender, and its successors and assigns succeed to ownership of the Mortgaged Property.

As used herein, "Environmental Law" means any federal, state, or local statutory or common law relating to pollution or protection of the environment, including without limitation, any common law of nuisance or trespass, and any law or regulation relating to emissions, discharges, releases or threatened releases of Hazardous Substances into the environment (including without limitation, ambient air, surface water, groundwater, land surface or subsurface strata) or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Hazardous Substances.

As used herein, "Hazardous Substance" means any substance or material (i) identified in Section 101(14) of CERCLA, 42 USC §9601(14), as the same may be amended from time to time, or (ii) determined to be toxic, a pollutant or contaminant, under federal, state or local statute, law, ordinance, rule or regulation or judicial or administrative order or decision, as same may be amended from time to time, including but not limited to petroleum and petroleum products as defined in Section 376.301(10), Florida Statutes, as same may be amended from time to time.

Exhibit A

Any breach of any warranty, representation or agreement contained in this Section shall be an event of default hereunder and shall entitle Lender to exercise any and all remedies provided in this Mortgage, or otherwise permitted by law.

[Signature page follows]

12

Exhibit A

This Mortgage and Security Agreement has been executed the date set forth above.

<table>
<tr><td>_____<br>Print Name:_____</td><td>By:_____<br>    W. Christian Hoyer<br>Address:_____</td></tr>
<tr><td>_____<br>Print Name:_____</td><td>_____</td></tr>
</table>

"Borrower"

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me this ____ day of July, 2018, by W. Christian Hoyer.

_____
Notary Public
Print Name:_____
My Commission Expires:_____

Personally Known ____ (OR) Produced Identification ____
Type of identification produced _____

13377.2058099v2

13

Exhibit A

Exhibit "A"

14

Exhibit A

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11

JOHN A. YANCHUNIS, SR.,                             Case No. 8:16-bk-10109-MGW

     Debtor.

_____/

## MOTION TO APPROVE SETTLEMENT
## WITH JAMES HOYER, P.A.; FOUNDERS FUNDING GROUP, LLC;
## W. CHRISTIAN HOYER; JOHN R. NEWCOMER, JR.; AND NANCY HARRISON

---

NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.

If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at Sam M. Gibbons U.S. Courthouse, 801 North Florida Avenue, Suite 555, Tampa, Florida 33602-3899, and serve a copy on the movant's attorney, Scott A. Stichter, Esquire, Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602, and any appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of ah hearing, or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

JOHN A. YANCHUNIS, SR. (the "**Debtor**" or "**Yanchunis**"), by and through his

undersigned attorneys, files this Motion to Approve Settlement with James Hoyer, P.A. ("**James**

**Hoyer**"), Founders Funding Group, LLC ("**Founders Funding**"); W. Christian Hoyer

("**Hoyer**"); John R. Newcomer, Jr. ("**Newcomer**"); and Nancy Harrison ("**Harrison**" and

Exhibit A

together with Yanchunis, James Hoyer, Founders Funding, Hoyer, and Newcomer, the **"Parties"**) (the **"Motion"**) and in support thereof, respectfully represents as follows:

1.      The Debtor filed his Voluntary Petition under Chapter 11 of the Bankruptcy Code on November 28, 2016 (the **"Petition Date"**).

2.      On February 16, 2017, the Debtor initiated an adversary proceeding styled *John Allen Yanchunis, Sr., v. James Hoyer, P.A., f/k/a James, Hoyer, Newcomer & Smiljanich, P.A., f/k/a James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A.; Founders Funding Group, LLC; W. Christian Hoyer; John R. Newcomer, Jr.; and Nancy Harrison*, Adversary Proceeding No. 8:71-ap-00141-MGW (the **"Adversary Proceeding"**).

3.      On July 19, 2017, this Court entered its Order Approving Debtor's First Amended Disclosure Statement for Debtor's First Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, and Confirming Debtor's First Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, as Modified (Doc. No. 127).

4.      On March 1, 2017, Harrison filed a claim against the Debtor seeking to recover $279,000 provide for in the judgment plus pre-petition attorney's fees and interest (the **"Harrison Claim"**), to which the Debtor filed an Objection.   The Court entered its Order Granting Debtor's Emergency Motion to Approve Settlement Agreement with Nancy Harrison (Doc. No. 191), which allowed the Harrison Claim in the amount of $321,000.00

5.      Yanchunis, James Hoyer, Founders Funding, Hoyer, Newcomer, and Harrison have reached a settlement during the middle of the trial of the Adversary Proceeding of certain claims as set forth in the Settlement Agreement (the **"Settlement Agreement"**) (attached hereto

Exhibit A

as **Exhibit A).**[1]   The Settlement Agreement does not provide for the settlement or release of claims more fully described in paragraph 16 of the Settlement Agreement.

6.       The Motion attempts to summarize the terms of the Settlement Agreement.  To the extent of a conflict between the Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

7.       Subject to Court approval, the parties have agreed as follows:

(a)       James Hoyer, Hoyer, and Newcomer (collectively, the "**James Hoyer Defendants**") shall be jointly and severally liable to pay Yanchunis the amount of One Million Two Hundred Twenty Five Thousand Dollars ($1,225,000.00) (the "**Settlement Amount**").   Upon the receipt of the Initial Settlement Payment (as defined below), Newcomer shall be released from the joint and several liability for the payment of the balance of the Settlement Amount.

(b)       The James Hoyer Defendants agree to pay to Yanchunis, in cash and U.S. Dollars, the Settlement Amount.   Each installment of the Settlement Amount shall be made payable to Stichter Riedel Blain & Postler, P.A. Trust Account

(c)       The Settlement Amount shall be paid as follows:

(i)       $500,000 on or before August 18, 2018 (the "**Initial Settlement Payment**");[2]

(ii)       The balance of the Settlement Amount in the amount of $725,000 shall accrue interest at the rate of five percent (5%) per annum and shall be paid as follows: (a) on or before July 19, 2019, the James Hoyer Defendants shall pay

---

[1]   The Motion summarizes the terms of the Settlement Agreement.  In the event of a conflict between the terms of the Settlement Agreement and the Motion, the terms of the Settlement Agreement shall control.

Exhibit A

$362,500 plus accrued interest; and (b) on or before July 19, 2020, the James Hoyer Defendants shall pay $362,500 plus accrued interest; and

(iii)    There shall be no pre-payment penalty.  In the event that the Settlement Amount is pre-paid, interest shall be calculated through the date of any pre-payment.

(d)    In the event of a failure to pay any amounts due under the Settlement Agreement, Yanchunis shall provide the James Hoyer Defendants and their counsel with notice of default and the opportunity to cure such default within five (5) business days. In the event that the outstanding payment is not made within five (5) business days, Yanchunis may seek the entry of a judgment in the amount of $2.4 million less payments made under the Settlement Agreement by filing an affidavit of default, with the only defenses available to the James Hoyer Defendants being whether the delinquency existed or was cured.

(e)    The James Hoyer Defendants stipulate and agree that the amounts owed under the Settlement Amount and the $2.4 million judgment referenced in paragraph 6 above shall be non-dischargeable.  Simultaneously with the execution of this Settlement Agreement, the James Hoyer Defendants have executed a statement of facts (the "**Fact Stipulation**"), which they will submit to the Court in camera and ex parte for approval in connection with the filing of a motion.  If approved by the Court, the Fact Stipulation shall be filed under seal.  The James Hoyer Defendants agree not to contest any matters set forth in the Fact Stipulation.  The order approving this Settlement Agreement shall recognize a sufficient basis for the Settlement Amount to be non-dischargeable and the James Hoyer Defendants agree to provide additional statements if the Court determines

---

[2] The Initial Settlement Payment has been received by the Debtor.

4

Exhibit A

the Fact Stipulation is insufficient to make a finding that the Settlement Amount is non-dischargeable.  The contents of the Fact Stipulation shall not be disclosed to any person or entity, except: (i) to the Court to the extent required to obtain Bankruptcy Court approval of this Settlement Agreement; (ii) to the appropriate person or entity pursuant to court order; or (iii) to the appropriate person or entity in the event the James Hoyer Defendants default in their payment obligations under this Settlement Agreement, but only to the extent reasonably necessary to support the non-dischargeability of the James Hoyer Defendants' payment obligations to Yanchunis.

(f)    The repayment of the Settlement Amount shall be secured by the following collateral:  (i) Hoyer's stock in James Hoyer by a stock pledge agreement in the form attached as *Exhibit B* to the Settlement Agreement; (ii) Hoyer's 49% interest in Nice Reddish Property, L.L.C. to the extent permitted by its governing instruments by the pledge agreement attached as *Exhibit C* to the Settlement Agreement; (iii) a first lien and mortgage on real property owned by Hoyer located at 4301 Place Le Manes, Lutz, FL 33558 in the form attached as *Exhibit D* to the Settlement Agreement, and  Hoyer shall not claim or file any notice that the property is his homestead until the mortgage has been recorded, and Hoyer agrees that any claim of homestead is subordinate to Yanchunis's mortgage; (iv) any trustee of any property in which Hoyer is a beneficiary shall execute documents agreeing to be bound by this Settlement Agreement; and (v) Yanchunis, at his own expense, may record any financing statement to perfect his security interest and liens granted under this Agreement.  Hoyer represents and warrants that the collateral has not been pledged except as set forth in this Agreement.

(g)    The James Hoyer Defendants shall be prohibited from starting a new law

Exhibit A

firm and/or transferring cases, clients, filed, or assets from James Hoyer.

(h)    Within five (5) Business Days after Yanchunis's receipt of the Initial Settlement Payment, Yanchunis and his counsel shall take all action necessary to effectuate the dismissal of the lawsuit pending against Founders Funding in the State Court, Case No. 2012-CA-13280, with prejudice, with each party to bear their own attorney's fees and costs in accordance with the terms of this Settlement Agreement.[3]

(i)    Claim No. 7 filed by Harrison, which was allowed in the amount of $321,000 pursuant to this Court's Order Granting Debtor's Emergency Motion to Approve Settlement with Nancy Harrison (Doc. No. 191), shall be allowed in the reduced amount of $271,000.00.    Within five (5) business days of the parties signing this Settlement Agreement, the James Hoyer Defendants shall withdraw with prejudice their objection to Claim No. 7 (Doc. No. 172).    Within five (5) business days of the parties signing this Settlement Agreement, Harrison shall file a notice of voluntary dismissal with prejudice of her claims brought in the Adversary Proceeding.

(j)    Yanchunis and the James Hoyer Defendants shall exchange releases for claims other than those set forth in paragraph 16 of the Settlement Agreement.    The James Hoyer Defendants and Harrison shall exchange mutual releases.

(k)    Hoyer hereby exercises his rights as majority shareholder to amend the Bylaws of James Hoyer to waive, with respect to Hoyer only, the 2014 amendment to the James Hoyer Bylaws that requires a departing shareholder to surrender his or her shares upon leaving the employment of the law firm, unless and until the Settlement Amount is paid in full. The James Hoyer Defendants agree that no further corporate action is needed to make this amendment to the Bylaws effective. The James Hoyer Defendants,

---

[3] Yanchunis has complied with these requirements.

6

Exhibit A

including Hoyer in his capacity as controlling shareholder, agree the James Hoyer's Bylaws shall be amended to provide that Yanchunis shall be entitled to hold stock in the Law Firm despite not being an employee of James Hoyer should Yanchunis foreclose on Hoyer's stock. The signature of Hoyer and James Hoyer to the Settlement Agreement serves as written action of the shareholders of James Hoyer in lieu of a meeting to effectuate the amendments provided for herein. The Settlement Agreement shall be placed in the James Hoyer corporate book and identified as a written action of the shareholders of James Hoyer.

(l)     Yanchunis contends that the Settlement Amount should be allocated as follows: (i) $428,000 as return of paid-in capital to Founders Funding; (ii) $300,000 as return of paid-in capital in James Hoyer; and (iii) remaining amounts for fees, costs, and other expenses in the Adversary Proceeding and the Bankruptcy Case. The James Hoyer Defendants make no such contention herein. The James Hoyer Defendants agree that they shall not issue Yanchunis a W-2 or issue a 1099 in an amount in excess of the portion of the Settlement Amount paid to Yanchunis in each tax year. If the James Hoyer Defendants receive an inquiry from any taxing authority concerning Yanchunis' allocation of the Settlement Amount, the James Hoyer Defendants agree to take no position with the taxing authority as to Yanchunis's allocation.

(m)     Under the Settlement Agreement, Yanchunis stipulates he is no longer a shareholder in James Hoyer and that he is no longer a member in Founders Funding.

(n)     The Court shall retain jurisdiction.

8.     Notwithstanding anything in the Agreement to the contrary, claims described in paragraph 16 shall not be released.

7

Exhibit A

9.      Yanchunis seeks approval of this Motion and the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement of a claim.

10.     The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) citing *In re Air Safety Intern.*, L.C., 336 B.R. 843, 852 (S.D. Fla. 2005); *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).

11.     The Court must determine whether a proposed settlement is fair and equitable. *Chira*, 367 B.R. at 896 (S.D. Fla. 2007). The Court must evaluate whether the compromise falls below the "lowest point in the range of reasonableness." *In re S&I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) citing *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993); *Arrow Air*, 85 B.R. at 886 (Bankr. S.D. Fla.1988).

12.     The Eleventh Circuit, in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990) provided additional guidance regarding whether a settlement should be approved by establishing a four-part test for a court to consider:  (i) the probability of success in litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

13.     Yanchunis submits that the proposed Settlement Agreement overwhelmingly satisfies the *Justice Oaks* standard.  The Settlement Agreement provides Yanchunis with an opportunity to efficiently settle claims to avoid the further costs and uncertainty of trial.

14.     The James Hoyer Defendants have raised numerous defenses to liability.  While

Exhibit A

Yanchunis believes that he will prevail, the presence of such defenses increase the complexity and cost of litigation and create the possibility for appeal.

15.     Yanchunis believes that the expense, inconvenience and delay that would be caused by further litigation would not be in the best interest of the estate.  The settlement was reached during the middle of the trial.  Continued litigation would turn out to be hard fought and costly.

16.     The compromise will resolve issues as to the collectability.

17.     Yanchunis further submits that the release of claims is appropriate.

18.     Therefore, after full and careful consideration, Yanchunis believes that the resolution set forth in the attached Settlement Agreement is in the best interest of the estate.

19.     Yanchunis requests that the Motion be considered on an emergency basic to allow the parties to avoid further litigation costs.

WHEREFORE, Yanchunis respectfully requests the entry of an order in substantially the same form of the order attached as **Exhibit B**, (i) granting this Motion, (ii) approving the terms of the Settlement Agreement, and (iii) granting such other relief as is just and proper.

_/s/ Scott A. Stichter_
Scott A. Stichter (FBN 0710679)
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 E. Madison Street, Suite 200
Tampa, Florida  33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
Email: sstichter@srbp.com
Attorneys for Debtor

9

Exhibit A

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion was served on all parties registered with CM/ECF, and by U.S. Mail to all parties in interest shown on the attached matrix on October _____, 2018.

*/s/ Scott A. Stichter*
Scott A. Stichter

13377.2057227v6

10

Exhibit A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11

JOHN A. YANCHUNIS, SR.,                             Case No. 8:16-bk-10109-MGW

      Debtor.

_____/

**ORDER GRANTING MOTION TO APPROVE**
**SETTLEMENT WITH JAMES HOYER, P.A.; FOUNDERS FUNDING GROUP,**
**LLC; W. CHRISTIAN HOYER; JOHN R. NEWCOMER, JR., AND NANCY HARRISON**

      THIS CASE came on for consideration of the Motion to Approve Settlement with James

Hoyer, P.A.; Founders Funding Group, LLC; W. Christian Hoyer; John R. Newcomer, Jr.; and

Nancy Harrison (Doc. No. ___) (the "**Compromise Motion**"), seeking approval of a settlement

between John A. Yanchunis, Sr. ("**Yanchunis**" or the "**Debtor**") and James Hoyer, P.A.

("**JHPA**"), Founders Funding Group, LLC ("**FFGLLC**"), W. Christian Hoyer ("**Hoyer**"), John R.

Newcomer, Jr. ("**Newcomer**"), and Nancy Harrison ("**Harrison**").  The Compromise Motion was

filed on October ___, 2018, and was served by negative notice to all creditors and parties in interest

shown on the matrix attached to the Motion.  No objection to the Compromise Motion was filed.

The Court finds that under the circumstances of this case, due and sufficient notice of the

Compromise Motion was provided to parties, and that such notice was adequate and appropriate in the current circumstances of these Chapter 11 cases as contemplated by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, the Plan, and a prior order entered by the Court regarding notice in these Chapter 11 cases. Therefore, any requests for other and further notice shall be and hereby are dispensed with and waived, and no other or further notice is necessary. Accordingly, it is

**ORDERED** that:

1.    The Compromise Motion is granted.

2.    The Settlement Agreement attached to the Compromise Motion as Exhibit A is approved in its entirety.

3.    James Hoyer, Hoyer, and Newcomer (collectively, the "**James Hoyer Defendants**") are jointly and severally liable to pay Yanchunis the amount of One Million Two Hundred Twenty Five Thousand Dollars ($1,225,000.00) (the "**Settlement Amount**"). Upon the receipt of the Initial Settlement Payment (as defined below), Newcomer shall be released from the joint and several liability for the payment of the balance of the Settlement Amount.

4.    The James Hoyer Defendants shall pay to Yanchunis, in cash and U.S. Dollars, the Settlement Amount. Each installment of the Settlement Amount shall be made payable to Stichter Riedel Blain & Postler, P.A. Trust Account.

5.    The Settlement Amount shall be paid as follows:

a.    $500,000 on or before August 18, 2018 (the "**Initial Settlement Payment**") which the parties acknowledge has been paid;

b.    The balance of the Settlement Amount in the amount of $725,000 shall accrue interest at the rate of five percent (5%) per annum and shall be paid as follows: (i)

Exhibit B
Exhibit A

on or before July 19, 2019, the James Hoyer Defendants shall pay $362,500 plus accrued

interest; and (ii) on or before July 19, 2020, the James Hoyer Defendants shall pay

$362,500 plus accrued interest; and

       c.     There shall be no pre-payment penalty.  In the event that the Settlement

Amount is pre-paid, interest shall be calculated through the date of any pre-payment.

6.     In the event of a failure to pay any amounts due under the Settlement Agreement,

Yanchunis shall provide the James Hoyer Defendants and their counsel with notice of default and

the opportunity to cure such default within five (5) business days.  In the event that the outstanding

payment is not made within five (5) business days, Yanchunis may seek the entry of a judgment

in the amount of $2.4 million less payments made under the Settlement Agreement by filing an

affidavit of default.

7.     The amounts owed under the Settlement Amount shall be non-dischargeable.  The

statement of facts (the "**Fact Stipulation**") submitted for the Court's *in camera* review and *ex*

*parte* approval constitutes clear and convincing evidence sufficient to adjudicate the issue of

nondischargeability under 11 U.S.C. § 523(a)(4) and *Bullock v. BankChampaign, N.A.*, 133 S. Ct.

1754 (2013).  The James Hoyer Defendants shall file the Fact Stipulation under seal.  The James

Hoyer Defendants shall not be permitted to contest any matters set forth in the Fact Stipulation.

The contents of the Fact Stipulation shall not be disclosed to any person or entity, except: (i) to the

Court to the extent required to obtain Bankruptcy Court approval of this Settlement Agreement;

(ii) to the appropriate person or entity pursuant to court order; or (iii) to the appropriate person or

entity in the event the James Hoyer Defendants default in their payment obligations under this

Settlement Agreement, but only to the extent reasonably necessary to support the

nondischargeability of the James Hoyer Defendants' payment obligations to Yanchunis.

Exhibit B
Exhibit A

pursuant to this Court's Order Granting Debtor's Emergency Motion to Approve Settlement with Nancy Harrison (Doc. No. 191), shall be allowed in the reduced amount of $271,000.00.

12.     The mutual releases between Yanchunis and the James Hoyer Defendants and Harrison and the James Hoyer Defendants are approved, provided, however, there shall be no release of claims as set forth in paragraph 16 of the Settlement Agreement.

13.     The James Hoyer Defendants shall cause James Hoyer to amend the Firm's By-Laws to waive any amendment to By-Laws as to Yanchunis's stock interest in James Hoyer and to provide that Yanchunis shall be entitled to hold stock in James Hoyer despite not being an employee of James Hoyer should Yanchunis foreclose on Hoyer's stock.

14.     Pursuant to the Settlement Agreement, Yanchunis is no longer a shareholder in James Hoyer and that he is no longer a member in Founders Funding.

15.     The Court reserves jurisdiction to enforce the terms of the compromise and settlement referenced in the Compromise Motion and approved by this Order.

*Attorney Scott A. Stichter is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.*

13377.2058821v4

Exhibit B
Exhibit A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                        Chapter 11

JOHN A. YANCHUNIS, SR.,                       Case No. 8:16-bk-10109-MGW

      Debtor.
_____/

**ORDER GRANTING MOTION TO APPROVE**
**SETTLEMENT WITH JAMES HOYER, P.A.; FOUNDERS FUNDING GROUP,**
**LLC; W. CHRISTIAN HOYER; JOHN R. NEWCOMER, JR., AND NANCY HARRISON**

      THIS CASE came on for consideration of the Motion to Approve Settlement with James

Hoyer, P.A.; Founders Funding Group, LLC; W. Christian Hoyer; John R. Newcomer, Jr.; and

Nancy Harrison (Doc. No. ___) (the "**Compromise Motion**"), seeking approval of a settlement

between John A. Yanchunis, Sr. ("**Yanchunis**" or the "**Debtor**") and James Hoyer, P.A.

("**JHPA**"), Founders Funding Group, LLC ("**FFGLLC**"), W. Christian Hoyer ("**Hoyer**"), John R.

Newcomer, Jr. ("**Newcomer**"), and Nancy Harrison ("**Harrison**").  The Compromise Motion was

filed on December 19, 2018, and was served by negative notice to all creditors and parties in

interest shown on the matrix attached to the Motion.  No objection to the Compromise Motion was

filed.  The Court finds that under the circumstances of this case, due and sufficient notice of the

Exhibit B

Compromise Motion was provided to parties, and that such notice was adequate and appropriate in the current circumstances of these Chapter 11 cases as contemplated by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, the Plan, and a prior order entered by the Court regarding notice in these Chapter 11 cases.  Therefore, any requests for other and further notice shall be and hereby are dispensed with and waived, and no other or further notice is necessary.  Accordingly, it is

   **ORDERED** that:

1.     The Compromise Motion is granted.

2.     The Settlement Agreement attached to the Compromise Motion as Exhibit A is approved in its entirety.

3.     James Hoyer, Hoyer, and Newcomer (collectively, the "**James Hoyer Defendants**") are jointly and severally liable to pay Yanchunis the amount of One Million Two Hundred Twenty Five Thousand Dollars ($1,225,000.00) (the "**Settlement Amount**").  Upon the receipt of the Initial Settlement Payment (as defined below), Newcomer shall be released from the joint and several liability for the payment of the balance of the Settlement Amount.

4.     The James Hoyer Defendants shall pay to Yanchunis, in cash and U.S. Dollars, the Settlement Amount.  Each installment of the Settlement Amount shall be made payable to Stichter Riedel Blain & Postler, P.A. Trust Account.

5.     The Settlement Amount shall be paid as follows:

   a.     $500,000 on or before August 18, 2018 (the "**Initial Settlement Payment**") which the parties acknowledge has been paid;

   b.     The balance of the Settlement Amount in the amount of $725,000 shall accrue interest at the rate of five percent (5%) per annum and shall be paid as follows: (i)

Exhibit B

on or before July 19, 2019, the James Hoyer Defendants shall pay $362,500 plus accrued interest; and (ii) on or before July 19, 2020, the James Hoyer Defendants shall pay $362,500 plus accrued interest; and

        c.      There shall be no pre-payment penalty.  In the event that the Settlement Amount is pre-paid, interest shall be calculated through the date of any pre-payment.

      6.      In the event of a failure to pay any amounts due under the Settlement Agreement, Yanchunis shall provide the James Hoyer Defendants and their counsel with notice of default and the opportunity to cure such default within five (5) business days.  In the event that the outstanding payment is not made within five (5) business days, Yanchunis may seek the entry of a judgment in the amount of $2.4 million less payments made under the Settlement Agreement by filing an affidavit of default.

      7.      The amounts owed under the Settlement Amount shall be non-dischargeable.  The statement of facts (the "**Fact Stipulation**") submitted for the Court's *in camera* review and *ex parte* approval constitutes clear and convincing evidence sufficient to adjudicate the issue of nondischargeability under 11 U.S.C. § 523(a)(4) and *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013).  The James Hoyer Defendants shall file the Fact Stipulation under seal.  The James Hoyer Defendants shall not be permitted to contest any matters set forth in the Fact Stipulation. The contents of the Fact Stipulation shall not be disclosed to any person or entity, except: (i) to the Court to the extent required to obtain Bankruptcy Court approval of this Settlement Agreement; (ii) to the appropriate person or entity pursuant to court order; or (iii) to the appropriate person or entity in the event the James Hoyer Defendants default in their payment obligations under this Settlement Agreement, but only to the extent reasonably necessary to support the nondischargeability of the James Hoyer Defendants' payment obligations to Yanchunis.

8.      The repayment of the Settlement Amount shall be secured by the following collateral:  (i) Hoyer's stock in James Hoyer by a stock pledge agreement in the form attached as Exhibit B to the Settlement Agreement; (ii) Hoyer's 49% interest in Nice Reddish Property, L.L.C. to the extent permitted by its governing instruments by the pledge agreement attached as Exhibit C to the Settlement Agreement; (iii) a first lien and mortgage on real property owned by Hoyer located at 4301 Place Le Manes, Lutz, FL  33558 in the form attached as Exhibit D to the Settlement Agreement, and  Hoyer shall not claim or file any notice that the property is his homestead until the mortgage has been recorded, and any claim of homestead is subordinate to Yanchunis's mortgage; (iv) any trustee of any property in which Hoyer is a beneficiary shall execute documents agreeing to be bound by this Settlement Agreement; and (v) Yanchunis, at his own expense, may record any financing statement to perfect his security interest and liens granted under this Agreement.

9.      Hoyer's representation and warranties that the collateral securing the obligations under the Settlement Agreement has not been pledged except as set forth in this Agreement is accepted by this Court.

10.      The James Hoyer Defendants shall be prohibited from starting a new law firm and/or transferring cases, clients, files, or assets from James Hoyer to that new law firm.  This prohibition cannot and shall not prevent any individual attorney other than Hoyer from leaving the employment of James Hoyer and pursuing gainful employment elsewhere or on his or her own, and shall not preclude any client of the James Hoyer firm from exercising the election rights provided to them pursuant to the Rules Regulating the Florida Bar, nor shall it preclude James Hoyer from changing its name.

11.      Claim No. 7 filed by Harrison, which was allowed in the amount of $321,000

pursuant to this Court's Order Granting Debtor's Emergency Motion to Approve Settlement with Nancy Harrison (Doc. No. 191), shall be allowed in the reduced amount of $271,000.00.

12.     The mutual releases between Yanchunis and the James Hoyer Defendants and Harrison and the James Hoyer Defendants are approved, provided, however, there shall be no release of claims as set forth in paragraph 16 of the Settlement Agreement.

13.     The James Hoyer Defendants shall cause James Hoyer to amend the Firm's By-Laws to waive any amendment to By-Laws as to Yanchunis's stock interest in James Hoyer and to provide that Yanchunis shall be entitled to hold stock in James Hoyer despite not being an employee of James Hoyer should Yanchunis foreclose on Hoyer's stock.

14.     Pursuant to the Settlement Agreement, Yanchunis is no longer a shareholder in James Hoyer and that he is no longer a member in Founders Funding.

15.     The Court reserves jurisdiction to enforce the terms of the compromise and settlement referenced in the Compromise Motion and approved by this Order.

*Attorney Scott A. Stichter is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.*

13377.2058821v5

Label Matrix for local noticing
113A-8
Case 8:16-bk-10109-MGW
Middle District of Florida
Tampa
Wed Dec 19 11:28:32 EST 2018

(p)AMERICREDIT FINANCIAL SERVICS DBA GM FINAN
PO BOX 183853
ARLINGTON TX 76096-3853

BMW Financial Services NA, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

BMW Financial Services NA, LLC
c/o Ascension Capital Group
P.O. Box 165028
Irving, TX 75016-5028

Boston Finance Group, LLC
4912 Creekside Drive
Clearwater, FL 33760-4019

Nancy Harrison
c/o Donald J Schutz
535 Central Avenue
St Petersburg, FL 33701-3703

W. Christian Hoyer
James Hoyer, P.A.
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609-2589

Persante Zuroweste, P.A.
2555 Enterprise Road
Suite 15
Clearwater, FL 33763-1118

Peter Schatzel
Wells Houser and Schatzel, PA
500-9th Avenue N
St Petersburg, FL   33701

Synchrony Bank
c/o PRA Receivables Management, LLC.
PO Box 41021
Norfolk, VA 23541-1021

U.S. Bank National Association
c/o Steven G. Powrozek
Shapiro, Fishman & Gache, LLP
4630 Woodland Corporate Blvd.
Suite 100
Tampa, FL 33614-2429

John Allen Yanchunis Sr.
208 1/2 12th Avenue North
St. Petersburg, FL 33701-1738

AmeriCredit Financial Services, Inc. dba GM
P O Box 183853
Arlington, TX 76096-3853

American InfoSource LP as agent for
T Mobile/T-Mobile USA Inc
PO Box 248848
Oklahoma City, OK  73124-8848

(p)BMW FINANCIAL SERVICES
CUSTOMER SERVICE CENTER
PO BOX 3608
DUBLIN OH 43016-0306

BOSTON FINANCE GROUP, LLC
c/o Allyson Lazzara, Esq.
4912 Creekside Drive
Clearwater, FL 33760-4019

Boston Finance Group, LLC
Attn:  Allyson Lazzara, Esq.
4912 Creekside Dr.
Clearwater, FL 33760-4019

Chase Bank
c/o Client Server
3451 Harry S. Truman Blvd.
Saint Charles, MO 63301-4047

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

GM Financial
P.O. Box 78143
Phoenix, AZ 85062-8143

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

James Hoyer, P.A.
McIntyre Thanasides
500 E Kennedy, Blvd., Suite 200
Tampa, FL 33602-4936

James Hoyer, P.A.
W. Christian Hoyer
c/o James Hoyer, P.A.
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609-2589

Jean Sutton Martin
2018 Eastwood Rd., #225
Wilmington, NC 28403-7228

Keane Reese Vesely et al
c/o Shirin M. Vesely, Esq.
770 2nd Ave. S.
Saint Petersburg, FL 33701-4006

Keane, Reese, Vesely & Gerdes, P.A.
770 2nd Avenue South
St. Petersburg, FL 33701-4006

Ken Heretick
125 562 St. S.
Saint Petersburg, FL 33701

Michael Heretick
4645 S. Semoran Blvd.
Orlando, FL 32822-2409

Nancy Harrison
2519 Harriman Circle
Tallahassee, FL 32308-0919

Nancy Harrison
c/o Donald J Schutz, Esq.
535 Central Avenue
St. Petersburg, FL 33701-3703

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

PersanteZuroweste
2555 Enterprise Rd., #15
Clearwater, FL 33763-1118

Pinellas County Tax Collector
ATT: Diane Nelson, CFC
PO Box 4006
Seminole, FL 33775-4006


Shell Oil Co.
P.O. Box 6406
Sioux Falls, SD 57117-6406

Steven E. Sellers, Esq.
3522 Thomasville Rd., #301
Tallahassee, FL 32309-3488

Stevens & Stevens
P.O. Box 388
Pinellas Park, FL 33780-0388


T Mobile USA, Inc.
c/o American InfoSource LP
P.O. Box 248848
Oklahoma City, OK 73124-8848

U.S. Bank National Association
c/o Steven G. Powrozek Esq.,
Shapiro, Fisman & Gache LLP
4630 Woodland Corporate Blvd, Ste 100
Tampa, FL 33614-2429

U.S. Bank National Association, as Trustee
c/o Wells Fargo Bank, N.A.
Default Document Processing
N9286-01Y
1000 Blue Gentian Road
Eagan, MN 55121-7700


Wells Fargo Bank, N.A.
c/o ASC
P.O. Box 10388
Des Moines, IA 50306-0388

Donald J. Schutz +
Schutz & Schutz
535 Central Avenue
St. Petersburg, FL 33701-3703

Scott A. Stichter +
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison Street, Suite 200
Tampa, FL 33602-4718


Paul B Thanasides +
McIntyre Thanasides Bringgold
Elliott Grimaldi Guito, PA
500 E Kennedy Blvd, Suite 200
Tampa, FL 33602-4936

United States Trustee - TPA +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Denise E Barnett +
United States Trustee
501 East Polk Street
Suite 1200
Tampa, FL 33602-3945


Robert Persante +
Persante Law Group, P.A.
2555 Enterprise Road
Building 15
Clearwater, FL 33763-1118

Richard J McIntyre +
McIntyre Thanasides Bringgold, et. al.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602-4936

Steven G Powrozek +
Shapiro, Fishman & Gache
4630 Woodland Corporate Blvd
Suite 100
Tampa, FL 33614-2429


Michael J Hooi +
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison St. Ste. 200
Tampa, FL 33602-4718

Allyson L Lazzara +
Boston Finance Group, LLC
4912 Creekside Drive
Clearwater, FL 33760-4019

Pinellas County Tax Collector  (RE) +
Pinellas County Tax Collector
Post Office Box 6340
Clearwater, FL 33758-6340


Sean Estes +
James Hoyer, P.A.
2801 West Busch Boulevard, Suite 200
Tampa, FL 33618-4500


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


AmeriCredit Financial Services, Inc.
dba GM Financial
P O Box 183853
Arlington, TX 76096

BMW Financial Services NA, LLC
P.O. Box 3608
Dublin, OH 43016

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)James Hoyer, P.A.

(u)Premier Sotheby's International Realty

(d)BMW Financial Services NA, LLC
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901


(d)Nancy Harrison
c/o Donald J Schutz
535 Central Avenue
St. Petersburg, FL 33701-3703

End of Label Matrix
Mailable recipients    51
Bypassed recipients     4
Total                  55